Gary L. McMILLAN, Plan Administrator and Trustee for the Parrott & McMillan, P.S.C., Money Purchase Pension Plan & Parrott & McMillan, P.S.C., Profit Sharing Plan, Plaintiff–Appellee,

v.

Barbara PARROTT,
Defendant–Appellant,

Claudia Parrott; Tim Futrell and Paducah Bank & Trust Company, Co-Administrators of the Estate of Norman A. Parrott; Christopher Parrott; Terry Parrott; Scott Parrott; and Stephen Parrott, Defendants–Appellees.

No. 89–6111.

United States Court of Appeals,
Sixth Circuit.

Argued July 23, 1990.

Decided Sept. 10, 1990.

Order on Grant of Rehearing
Oct. 26, 1990.

Gary B. Houston, Randy L. Treece, Whitlow, Roberts, Houston & Russell, Paducah, Ky., for plaintiff-appellee.

John T. Reed (argued), Paducah, Ky., J. Ronald Jackson, Jackson & Jackson, Paducah, Ky., Hoyt O. Samples (argued), Samples & Jennings, Chattanooga, Tenn., for defendants-appellees.

Before KEITH and GUY, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

This appeal involves a dispute between Barbara Parrott, the former wife of Dr. Norman Parrott; Claudia Parrott, who is his widow; his children from yet another marriage; and his estate for the proceeds of two vested ERISA plans.

Dr. Parrott died on August 12, 1986, less than 24 hours after his marriage to Claudia, his third wife. Dr. Parrott was a participant in the Parrott & McMillan, P.S.C., Money Purchase Pension Trust and the Parrott & McMillan, P.S.C., Profit Sharing Trust, two vested ERISA plans.

At the time Dr. Parrott created the plans in 1982 he was married to Barbara, the appellant here, whom he named as beneficiary. He named his son from a previous marriage as contingent beneficiary. Both plans contained a clause stating that the participant could name a beneficiary and that to change the beneficiary, the participant could file a new or amended designation with the plan administrator.

Later that year, Dr. Parrott and Barbara were divorced and signed a joint settlement in which they divided their marital property. The settlement contained a broad waiver clause in which each spouse relinquished "any and all" claims he or she might have against the other. Another section recited that Dr. Parrott was to receive all property not otherwise disposed of in the agreement. Despite this language, after the divorce Dr. Parrott never removed Barbara's name as beneficiary of the plans, never named another beneficiary, and they continued to see each other "socially." Therefore, at the time of Dr. Parrott's death, Barbara was designated as his beneficiary by the documents on file with the plan administrator, Dr. McMillan.

After Dr. Parrott's death, the plan administrator sought a declaratory judgment to determine who was entitled to the proceeds of the plans. See 29 U.S.C. § 1132 (1985); 28 U.S.C. § 2201 (Supp.1990). The court first granted partial summary judgment for Dr. Parrott's widow, Claudia, ruling that as a matter of federal law she was entitled to half the proceeds. See 26 U.S.C. §§ 401(a)(11)(A), 417(c)(2) (Supp.1990). This ruling has not been appealed.

It then denied summary judgment for Barbara Parrott and dismissed her claim to the other half of the plan proceeds, ruling that she had waived her rights as beneficiary by the divorce settlement. Claudia, the children, and the estate then reached a separate agreement, which the court approved, in which they divided the remaining half of the plan proceeds. The court denied Barbara's motion to vacate its order of summary judgment, and this appeal followed. Thus, the only issue on appeal is the correctness of the district court's ruling denying Barbara's claim to half the proceeds.

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Barbara does not, as indicated, dispute that Claudia was entitled to half the proceeds of the plans as Dr. Parrott's widow. But she denies that she effectively waived her claim by the divorce settlement to the other half of the proceeds.

■ The district court appears to have based its decision on state law. This we believe was incorrect. Section 1144(a) of ERISA provides that federal law shall supersede all state laws which "relate to" an ERISA plan. 29 U.S.C. § 1144(a) (1985). This preemption provision is to be construed broadly; a law "relates to" an ERISA plan "if it has a connection with or reference to such a plan...." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–00, 77 L.Ed.2d 490 (1983). The designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue. See Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275, 278 (7th Cir.1990) (en banc); Lyman Lumber Co. v. Hill, 877 F.2d 692, 693 (8th Cir.1989).

The court must therefore look to either the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987); Whitworth Bros. Storage Co. v. Central States SE and SW Areas Pension Fund, 794 F.2d 221, 234–35 (6th Cir.), cert. denied, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986). We believe that the explicit provisions of ERISA make clear that Barbara Parrott did not effectively waive her interest as Dr. Parrott's beneficiary.

■ ERISA requires that a plan administrator discharge his duties "in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104(a)(1)(D) (1985). Both plans state, "Each Participant shall be given the opportunity in an original election to designate a Beneficiary and from time to time the Participant may file with the Plan Administrator a new or revised designation in such form as the Plan Administrator shall provide." The designation of beneficiary under the plans named Barbara Parrott as Dr. Parrott's beneficiary, and continued to do so, unchanged, for four years after their divorce. This clear statutory command, to-

gether with the plan provisions, answer the question; the documents control, and those name Barbara Parrott.

We believe this resolution fulfills the intent of Congress that ERISA plans be uniform in their interpretation and simple in their application. *See* H.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News 4639, 4650. A participant is master of his own ERISA plan. Dr. Parrott agreed to the plans, including the provision concerning the designation and change of beneficiary, kept these documents in his office, and did not change the beneficiary in over four years. Simply put, it was Dr. Parrott's designation which controls, not Barbara's intent. Under the plans, we determine his intent by the designation on file at the time of his death.

Such a holding also allows the parties to be certain of their rights and obligations. *See Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1162 (6th Cir.1988). It is for this reason that ERISA plans are to be administered according to their controlling documents. "Rules requiring payment to the named beneficiary yield simple administration, avoid double liability, and ensure that beneficiaries get what's coming to them without the folderol essential under less-certain rules." *Fox Valley*, 897 F.2d at 283 (Easterbrook, J., dissenting). If the designation on file controls, administrators and courts need look no further than the plan documents to determine the beneficiary, thus avoiding expensive litigation as has occurred in the case before us.[1] *See id.*

Even if we were to resolve this question by reference to federal common law, we believe that Barbara Parrott's waiver would not be effective here. The only cases which have applied such law have required that, to be effective, the waiver must specifically refer to the spouse's rights as beneficiary in an ERISA plan. *See Fox Valley*, 897 F.2d 275, 278 (7th Cir.1990) (en banc); *Lyman Lumber*, 877 F.2d 692, 693 (8th Cir.1989). The waiver provision in Barbara Parrott's divorce settlement, however emphatic, does not specifically refer to her interest as beneficiary of these ERISA plans.[2]

We hold that Barbara Parrott is entitled, as Dr. Parrott's named beneficiary, to that portion of the proceeds of these ERISA plans which are not owed to Dr. Parrott's widow under federal law. Therefore, we REVERSE the decision of the district court denying Barbara Parrott's motion for summary judgment.

## ORDER

### Oct. 26, 1990.

The appellees have filed a "petition for rehearing, reconsideration or clarification," in which it is contended that there are issues remaining to be decided and that therefore there should be a remand for that purpose.

It appears that the district court denied appellant's (Barbara Parrott's) motion for summary judgment and dismissed her claim. Upon appellant's appeal, this court held that, based upon the summary judgment record, the district court erred in denying her motion for summary judgment and reversed the decision of the district court. It therefore appears to this court that, with respect to appellant's claim, this court has determined that she is entitled to prevail. However, it further appears that this court should have remanded to the

---

1. In *Fox Valley*, 897 F.2d at 279–80, the court held that the anti-alienation provision in ERISA, 29 U.S.C. § 1056(d), does not prohibit the alienation, assignment, or waiver of interest by a beneficiary, such as Barbara. The minority held the contrary. *See id.* at 283. We need not decide this issue because we herein hold that the interest of Barbara Parrott is controlled by the plan documents as they provided at the time of Dr. Parrott's death.

2. The waiver clause provided:
   *Full Release* Each party hereby waives, relinquishes and forever releases the other party of any and all claims he or she may have against the other for dower, curtesy, alimony, maintenance, property settlement, and all other claims of any kind and nature, except as herein provided; it being understood and mutually agreed between the parties that this Settlement Agreement represents a full, final and complete settlement of any and all claims of every kind, character and description which the other party may have against the other.
   Another clause provided:
   The Respondent [Dr. Parrott] shall be awarded all of the remaining marital property and non-marital property of the parties including, but not limited to, all real and personal property wheresoever located and all rights, claims, causes or other entitlements, whether stated or implied and in whatever form contained.

district court for further proceedings consistent with this court's opinion and this order.

Accordingly, the petition to rehear is GRANTED and the case is REMANDED to the district court for further proceedings consistent with this court's opinion and this order.