WILKINSON, Chief Judge,
dissenting:
The majority decides this case on grounds of federal common law when it need look no further than the terms of the statute. As we have explained, “resort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA.” Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th Cir.1992). Here, the equities of the majority’s disposition seem tempting, but ERISA’s provisions compel a contrary outcome. Fearing the long term consequences of replacing rules of Congress with our own, I respectfully dissent.
ERISA requires that plan administrators perform their obligations “in accordance with the documents and instruments governing the plan.” 29 U.S.C. § 1104(a)(1)(D). This simple statutory directive requires that we heed the beneficiary designation on file with IBM’s pension plans. There is no question that Helen Dietsch is the designated beneficiary in those plans. While Altobelli never expressly named a beneficiary, the plan documents stipulate that absent specification “the beneficiary shall be deemed to be the beneficiary under the IBM Group Life Insurance Plan.” The beneficiary under Altobelli’s life insurance plan, and hence also his pension plans, is Helen Dietsch.
IBM’s pension plans allow participants to designate or change a beneficiary: “Such designation or change of designation shall be in writing in a form satisfactory to the Plan Administrator and shall be submitted to the Company’s Payroll Department and shall be effective upon receipt by that Department.” Following Altobelli’s divorce from Dietsch, however, he did not specify a new beneficiary under his pension plans, nor did he remove Dietsch as the beneficiary under his life insurance plan. Thus, according to the “documents and instruments governing the plan,” 29 U.S.C. § 1104(a)(1)(D), the beneficiary of Altobelli’s pension plans is and always has been Helen Dietsch. In. short, the “clear statutory command, together with the plan provisions, answer the question; the documents control,” McMillan v. Parrott, 913 F.2d 310, 311-12 (6th Cir.1990), and those documents name Dietsch.
Sound reasons support the statutory rule of assigning benefits in accordance with plan documents. Heeding “the federal rule favoring beneficiary designations filed with a plan administrator” promotes the “strong interest in uniform, uncomplicated administration of ERISA plans.” Krishna v. Colgate Palmolive Co., 7 F.3d 11, 16 (2d Cir.1993); see also Fox Valley & Vicinity Construction Workers Pension Fund v. Brown, 897 F.2d 275, 283 (7th Cir.) (en banc) (Easterbrook, J., dissenting), cert. denied, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). “[Rjeliance on the face of written plan documents” also furthers another of ERISA’s central goals, that of “enabling beneficiaries[and employees] to learn their rights and obligations at any time.” Curtiss-Wright Corp. v. Schoonejon-gen, - U.S. -, -, 115 S.Ct. 1223, 1230, 131 L.Ed.2d 94 (1995). Strict adherence to § 1104(a)(1)(D) ensures that all interested parties, including participants, beneficiaries, and plan administrators, can identify their rights and duties with certainty, a primary objective of ERISA. Parrott, 913 F.2d at 312. This in turn limits costly disputes over the effect of outside documents on the distribution of plan benefits. See id.
Because the majority ignores the beneficiary designation on file with the IBM plans, its approach compromises the principles underlying § 1104(a)(1)(D). Forcing plan trustees to examine a multitude of external documents that might purport to affect the *83 dispensation of benefits frustrates the statutory goals of efficiency in administration and certainty in expectations. See Krishna, 7 F.3d at 16. The costs associated with these inefficiencies might well “lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them.” Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). And uncertainties over the interpretation of external documents will produce conflicts among parties asserting rights to plan benefits, miring plan, assets in expensive litigation.
These concerns are not alleviated by construing the majority’s ruling to apply only to beneficiary waivers in divorce decrees. Interpreting those decrees will cause problems for plan administrators. For instance, waiver provisions are often’ sweeping in their terms, leaving their precise effect on plan benefits unclear. See Equitable Life Assurance Soc’y v. Stitzel, 299 Pa.Super. 199, 445 A.2d 523 (1982) (waiver of “any and all claims ... of whatsoever kind or nature” found not to waive claim to beneficiary interest in life insurance plan). Even when facing waiver terms that reference the affected plans, plan administrators will have to assess whether the waiver is executed with sufficient specificity to trump the beneficiary designation in the plan documents. Courts have reached contradictory conclusions in such situations. Compare Lyman Lumber Co. v. Hill, 877 F.2d 692 (8th Cir.1989) (term stating that husband “shall have as his own, free of any interest of [his wife], his interest in the profit-sharing plan of his employer” held not to waive wife’s beneficiary interest in plan), loith Fox Valley, 897 F.2d at 275 (term stating that the parties “waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party” held to waive wife’s beneficiary interest in pension plan). Forcing plan trustees to make such determinations will only complicate plan administration and will leave all parties unsure of their rights and obligations. The better rule is the one dictated by the statute — to honor the designations on file with the plan documents.
The majority contends that examining the enforceability of waiver provisions in divorce decrees will not unduly compromise plan administration because plan trustees already must review divorce decrees to determine whether they constitute Qualified Domestic Relations Orders (“QDROs”).* 29 U.S.C. § 1056(d)(3)(G)(i). I cannot agree. Congress was concerned with the very problems that face us here when it defined the requirements to establish a QDRO, and it took pains to assure that enforcement of QDROs would not produce inefficiency and uncertainty. To constitute a QDRO, a divorce decree must “clearly specif[y]” the identity of any benefit recipient, the particular plans affected, and the exact manner of calculating the amount of benefits to be paid. See 29 U.S.C. § 1056(d)(3)(C). “The requirement of clear specification is designed to spare the plan administrator from litigation-fomenting ambiguities as to who the beneficiaries designated by the divorce decree are,” Metropolitan Life Ins. Co. v. Wheaton, 42 F.3d 1080, 1084 (7th Cir.1994), and to ensure that “the decree provides an administrator with information needed to process a claim efficiently so that assets are preserved and beneficiaries’ interests are served,” Carland v. Metropolitan Life Ins. Co., 935 F.2d 1114, 1122 (10th Cir.), cert. denied, 502 U.S. 1020, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991). ERISA also requires that all plans develop written procedures for determining whether a divorce decree is a QDRO. See 29 U.S.C. § 1056(d)(3)(G)(ii). The statute contains no similar precautions to assure efficiency in plan administration with respect to non-QDRO divorce decrees.
*84 In sum, I agree with the Second and Sixth Circuit’s approach to this question. Krishna, 7 F.3d at 11; Parrott, 913 F.2d at 310. Plans should be administered “in accordance with the plan documents,” not extraneous ones. What seem like small equitable steps in a particular case may lead to large administrative headaches in the aggregate. IBM sought nothing more than to administer its plan as the statute and the plan require. I am surprised that this court would prohibit it from doing so. I would reverse the judgment.

 QDROs were designed as a narrow exception to ERISA's general prohibition on alienation or assignment of benefits, 29 U.S.C. § 1056(d)(1), to allow the attachment of an employee's pension benefits to satisfy his or her family support obligations. See S.Rcp. No. 575, 98th Cong., 2d Scss. 18-19, reprinted In 1984 U.S.C.C.A.N. 2547, 2564-65. The divorce decree at issue here is not a QDRO. A QDRO exists when, among other things, a participant assigns benefits to an "alternate payee,” defined as a “spouse, former spouse, child, or other dependent of a participant.” 29 U.S.C. § 1056(d)(3)(K). Here the participant did not attempt to assign his benefits to his former spouse or any other alternate payee; rather, the former spouse attempted to waive her rights in favor of the participant.