**TRUSTEES OF IRON WORKERS LOCAL 451 ANNUITY FUND, Plaintiff,**

v.

**Erma L. O'BRIEN, Marie O'Brien, Kevin O'Brien, and the Estate of Michael E. O'Brien, Defendants.**

Civil Action No. 95–458 MMS.

United States District Court,
D. Delaware.

Aug. 2, 1996.

Victor F. Battaglia, Jr., of Biggs & Battaglia, Wilmington, for plaintiff.

Stuart B. Young, of Young, Conaway, Stargatt & Taylor; Wilmington, for defendants Erma L. O'Brien and the Estate of Michael E. O'Brien.

James A. Robb, Wilmington, for defendants Marie O'Brien and Kevin O'Brien.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. Introduction

These motions for summary judgment have been filed by defendants in response to a Declaratory Judgment action brought by the Trustees of Iron Workers Local 451 Annuity Fund (the "Trustees"). The Trustees seek a declaration pursuant to 28 U.S.C. § 2201 as to which party is the proper beneficiary of certain benefits which accrued to Michael O'Brien ("Michael"), deceased, a former participant in the Iron Workers Local 451 Annuity Fund (the "Annuity Fund"). The Trustees filed a complaint against defendants Marie O'Brien ("Marie"), Michael's former wife; and Erma O'Brien ("Erma"), Michael's second wife and widow, D.I. 1. The complaint was subsequently amended to name as additional defendants Kevin O'Brien ("Kevin"), Michael's son; and the Estate of Michael O'Brien (the "Estate"), D.I. 24. Each defendant has moved for summary judgment, claiming entitlement to the proceeds from Michael's account, an amount of approximately $36,700. For the reasons set forth below, Kevin and Marie's motion for summary judgment will be granted as to Marie, and denied as to Kevin. The Estate's motion for summary judgment will be denied.

### II. Factual Background

Michael and Marie were married in 1964. D.I. 24 (Amended Complaint), ¶ 5. Michael was a participant in the Annuity Fund managed by Trustees from July, 1982 until November 13, 1994, the date of his death. *Id.* ¶ 10. The Annuity Fund is a pension plan and an employee benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). On December 23, 1984, Michael executed a Beneficiary Designation Form (the "Designation Form") which was filed with the Annuity Fund, designating Marie, his then current wife, as primary beneficiary in the event of his death. In the event that Marie predeceased him, Michael designated Kevin, his son, as secondary beneficiary. *Id.* ¶ 12. The Designation Form provided that Marie would receive 100% of the benefits in the event of his death. *Id.* ¶ 13.

In 1990, Michael and Marie were divorced. The divorce settlement was reduced to writing in the form of a document entitled the "Stipulation Agreement and Order," dated June 20, 1990 (the "Divorce Stipulation"). D.I. 17, Exh. C. In addition to dividing up the marital assets, the Divorce Stipulation contained a provision directing counsel for Marie to prepare a Qualified Domestic Relations Order ("QDRO"), within the meaning of the Retirement Equity Act of 1984. *Id.* ¶ 3. The QDRO was executed on April 5, 1991. The QDRO provided, *inter alia,* that the Annuity Fund was to pay Marie 50% of Michael's nonforfeitable account balance as of May 30, 1990. That payment was made on July 1, 1990. D.I. 17, Exh. D, ¶ 13.

The Divorce Stipulation had a waiver provision found at paragraph 15, which purported to release each party from present and future claims by the other. It provided:

Each party acknowledges that the provisions herein made for him or her are fair, adequate, reasonable, and satisfactory to him or her. Accordingly, each accepts the same in full and final settlement and satisfaction of any and all claims and rights that each may now or hereafter have against the other for (1) support and maintenance and (2) in any divorce proceeding in lieu of property division, distribution and assignment pursuant to 13 *Del.C.* § 1513, or otherwise, and in lieu of any alimony payments, temporary or permanent, pursuant to 13 *Del.C.* §§ 1509, 1512, 1518 *or otherwise.*

*Id.,* Exh. C, ¶ 15.

Subsequent to the divorce, Michael married Erma. However, Michael failed to file a new Designation Form with the Annuity Fund to change his beneficiary, and thus Marie remained the beneficiary. D.I. 24, ¶ 16. Michael died on November 13, 1994. Following Michael's death, the total amount of the benefits was $68,886.22. *Id.* ¶ 18. Erma filed for 100% of the benefits with the Annuity Fund. The Trustees paid Erma 50% of the sum. *Id.* ¶ 21. The Trustees believed that ERISA and the Internal Revenue Code require payment of at least 50% of the pension benefits to the surviving spouse of a deceased participant in a pension plan, unless the surviving spouse has consented to the designation of another beneficiary. *Id.* ¶¶ 19–22; *see* 29 U.S.C. §§ 1055(a)(2) and (e)(2); 26 U.S.C. §§ 401(a)(11) and 417(c)(2). Consistent with the 50% floor to be paid the surviving spouse under federal law, the terms of the Annuity Fund permit the surviving spouse of a participant to receive at least 50% of the proceeds if someone other than the participant's spouse is designated as beneficiary without that spouse's consent. *Id.* ¶ 20. The Trustees also interpreted ERISA to require that the remaining 50%, an amount of approximately $36,700 which is the subject of this dispute, be paid to Marie, who remained as Michael's designated beneficiary. *Id.* ¶ 22.

Also subsequent to Michael's death, a dispute arose as to who, between Erma and Marie, was entitled to the proceeds of certain life insurance policies on Michael's life. Al-though the facts surrounding these policies and the manner in which the dispute arose is unclear, what is undisputed between the parties is that both Marie and Erma believed that each was entitled to the proceeds. Eventually, settlement was reached whereby the proceeds were split in equal shares (the "Life Insurance Settlement"). Pursuant to the Life Insurance Settlement, each party signed a waiver of rights against the other, which included the following language purporting to waive any and all claims by Marie related to Michael's union membership:

Marie H. O'Brien for herself, her heirs, assigns and personal representatives hereby waives, releases, and remises any claim she has or may have to benefits arising out of the late Michael O'Brien's union membership, provided however, that nothing in this Settlement Agreement shall affect the survivors' pension benefits that Marie H. O'Brien or Erma L. O'Brien are currently receiving from the Iron Workers Local 451 Pension Plan and also Marie H. O'Brien's rights under a Property Division and Settlement Agreement dated June 20, 1990.

D.I. 17, Exh. G.

Having already received 50% of the proceeds from the Annuity Fund, Erma filed a claim for the remaining 50% of the benefits. Marie, as designated beneficiary, has also filed for that amount. Kevin, Michael's son, has taken the position that if the Court finds that Marie has waived her right to the benefits, he is entitled to the benefits as secondary beneficiary on the Designation Form. D.I. 24, ¶ 25. The Estate also claims entitlement to the proceeds in the event that the Court finds that Erma is not entitled to the benefits. *Id.* ¶ 26. The uncertainty surrounding the proper recipient has caused the Trustees to file this action.

Erma filed a motion for partial summary judgment on the issue of whether Marie waived her right to the benefits in the Divorce Stipulation and in the Life Insurance Settlement entered into by Marie and Erma. Specifically, Erma argues that in the QDRO, Michael agreed to pay Marie a lump sum of 50% of the Annuity Fund proceeds, which was paid in 1991. In the Divorce Stipulation, which incorporates the QDRO by reference,

Marie agreed that the agreement was "fair, adequate, reasonable and satisfactory" and that it constituted a "full and final settlement of any and all claims and rights that [she] may now or hereafter have against the other." D.I. 17 at 5. Additionally, the Life Insurance Settlement contained a waiver by Marie, whereby Marie agreed to "waive[ ], release[ ], and remise[ ] any claim she has or may have to benefits arising out of the late Michael O'Brien's union membership." *Id.* at 6 and Exh. G. Erma argues that under federal common law, Marie waived her rights to the benefits in the Annuity Fund, notwithstanding her continued status as beneficiary.

After the Trustees filed their Amended Complaint adding Kevin and the Estate as defendants, Erma filed a new answer in which she conceded that she had no right to the proceeds other than through intestacy as surviving spouse. D.I. 29. Accordingly, at oral argument on June 5, 1996, Erma withdrew her motion for partial summary judgment, D.I. 16. Because Erma's motion for partial summary judgment is withdrawn, and the Court will not address this motion further. Erma now argues that the Estate is the proper recipient. D.I. 29, ¶ 24. Under Delaware law, because Michael died intestate, one-half of the intestate personal estate passes to his surviving spouse Erma, and the other half passes to his children. *See* 12 *Del.C.* §§ 501 *et seq.* Thus, if the Estate is the proper beneficiary, Erma will receive one-half of the remaining portion of benefits, and the other half will be shared equally by Kevin and Elizabeth Dietrich, Michael's daughter.

Marie argues that her purported waivers were not knowing and voluntary because she did not know she was still the beneficiary under the Designation Form. D.I. 19. She further argues that even if there were a waiver, there is an issue of fact as to whether there were a "superseding event" under state law, "whereby Mr. O'Brien decided to leave his former wife Marie and son Kevin as primary and secondary beneficiaries following his divorce from Marie." *Id.* at 6. Final-

ly, Marie argues that the cases cited by Erma are inapposite because those cases involved specific waivers of rights, and in this case, the purported waivers by Marie were general. *Id.* at 7.[1]

Kevin and Marie then jointly filed for summary judgment against Erma on April 15, 1996. D.I. 26. They argue that Erma has no claim to the benefits individually, but only as an intestate taker from the Estate. Without stating any reason why either Kevin or Marie is entitled to the proceeds, they simply argue that "[s]ummary judgment should be granted due to the lack of issues of fact, and conclusive evidence in the documents in the Record and Delaware law that Defendant Erma O'Brien has no claim to the Fund." *Id.* at 3. Thus, Kevin and Marie do not argue why they are entitled to the proceeds; they simply argue why Erma is *not*. It bears repeating that Erma had already conceded she had no right to the benefits other than as intestate taker through the Estate.

The Estate filed its motion for summary judgment on May 2, 1996. D.I. 30. The Estate's theory is that because nobody else is entitled to the proceeds, they should pass to the Estate. First, the Estate argues that Marie has waived her right to the benefits. Second, the Estate argues that Kevin never had any right to the proceeds as secondary beneficiary because the Designation Form expressly states that the rights of the secondary beneficiary do not vest unless the primary beneficiary predeceases the plan participant, which, in this case, did not happen. Third, the Estate argues that Erma is not entitled to the proceeds as surviving spouse, a point she has conceded in her answer. Therefore, the Estate argues, the proceeds should pass to it under Delaware law.

### III. Analysis

Resolution of the competing claims for Michael's benefits turns on whether Marie, who is undisputedly named as primary beneficiary on the Designation Form, waived her

---

1. Marie's final argument was that Kevin and the Estate are indispensable parties to the action, and the pendency of the motion to amend to add them as parties precludes entry of summary judgment. Because the Court granted the motion to amend the complaint, D.I. 22, and Kevin and the Estate are now parties, this argument will not be further addressed.

rights to the benefits by agreement, either in the Divorce Stipulation, or by agreeing to the Life Insurance Settlement with Erma. As the facts are not in dispute, the Court is faced with a purely legal question on the issue of waiver. The Estate argues that in both the Divorce Stipulation between Michael and Marie, and in the Life Insurance Settlement between Erma and Marie, Marie waived any present and future claims she might have against Michael.

While there is authority for the proposition that a divorce settlement may waive pension benefits from plans governed by ERISA, there is no authority for the proposition that an agreement between a beneficiary and a third person, such as the Life Insurance Settlement made after Michael's death, can act as a waiver of claims by the beneficiary against the participant. At oral argument, counsel for the Estate conceded this point, and chose to rely primarily on its waiver argument in connection with the Divorce Stipulation. Accordingly, the Court now turns its attention to the issue of whether Marie's release in the Divorce Stipulation is sufficient to constitute a waiver of her rights as beneficiary under the Annuity Fund.

The Estate argues that Marie, the designated beneficiary, validly waived her rights by executing the Divorce Stipulation at the time of her divorce from Michael. To prevail on this point, the Estate must demonstrate that a beneficiary of a pension plan governed by ERISA may waive his or her rights to the benefits in a divorce settlement. While the Third Circuit Court of Appeals has not ruled on this issue, numerous courts have upheld waivers of benefits from ERISA pension plans in divorce settlements by the beneficiaries by reference to federal common law. *See, e.g., Estate of Altobelli v. International Business Machs. Corp.,* 77 F.3d 78, 80 (4th Cir.1996) ("The issue [of] whether a divorced spouse, who was the designated beneficiary under her ex-husband's ERISA plan, effectively waived her benefits via a marital settlement agreement [may be] resolved by developing federal common law."); *Mohamed v. Kerr,* 53 F.3d 911, 914 (8th Cir.1995) ("Thus, under federal common law, a settlement entered into pursuant to a judgment of dissolution may divest a former spouse of beneficiary rights...."); *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1326 (5th Cir.1994) (federal common law recognizes beneficiary's ability to waive benefits in divorce decree by specific terms extinguishing the interest); *see also Metropolitan Life Ins. Co. v. Hanslip,* 939 F.2d 904, 907 (10th Cir.1991) (same); *McMillan v. Parrott,* 913 F.2d 310, 312 (6th Cir. 1990) (same); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693–94 (8th Cir.1989) (same); *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 280 (7th Cir.) (en banc), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990) (same); *see also Czarski v. Bonk,* 928 F.Supp. 719 (E.D.Mich.1996) ("[A] growing body of federal common law recognizes that a plan beneficiary may effectively waive her right to benefits pursuant to a divorce decree.").

These courts have uniformly determined that while ERISA does not prohibit such waivers, ERISA provides no guidance as to what acts constitute a valid waiver of benefits. *See Altobelli,* 77 F.3d at 80 ("ERISA does not address this topic directly, so federal courts may resolve it by developing federal common law."); *Fox Valley,* 897 F.2d at 281 (noting that ERISA does not speak to what constitutes an effective waiver); *Czarski v. Bonk,* 928 F.Supp. 719 ("Unfortunately, no ERISA provision exists that defines if and how a plan beneficiary can waive her right to benefits."). The Third Circuit Court of Appeals has held that federal courts should fashion federal common law rules to fill interstices in the language of ERISA. *Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1257 n. 8 (3d Cir.1993). Because ERISA is silent on the issue of waiver of benefits by a beneficiary, the Court will look to federal common law. *Brandon,* 18 F.3d at 1325; *McMillan,* 913 F.2d at 311.

Federal common law has uniformly held that in order for a plan beneficiary to waive his or her benefits through a divorce decree, the waiver must specifically mention the pension benefits being waived. *See, e.g., Altobelli,* 77 F.3d at 81 (finding that "each party clearly intended to relinquish all interests in the pension plans of the other");

*Mohamed*, 53 F.3d at 915 ("The question remains for us to decide ... whether the Kerr settlement 'specifically divest[ed] the spouse's rights as a beneficiary under the policy.' ") (citation omitted); *Brandon*, 18 F.3d at 1326 (asking "whether there was a valid, specific waiver of benefits in the divorce decree to which the court, under the auspices of federal common law, could give effect."); *McMillan*, 913 F.2d at 312 ("The only cases which have applied [federal common law] have required that, to be effective, the waiver must specifically refer to the spouse's rights as beneficiary in an ERISA plan."); *Lyman Lumber*, 877 F.2d at 693 ("A number of courts have held that the spouse's rights as a beneficiary are extinguished only by terms specifically divesting the spouse's right as beneficiary under the policy or plan."); *Fox Valley*, 897 F.2d at 281 (same).

In *Altobelli*, 77 F.3d at 81, the Fourth Circuit Court of Appeals found that the waiver provision in a marital settlement agreement, which was incorporated into the divorce decree, demonstrated that the parties "clearly intended to relinquish all interests in the pension plans of the other." The waiver provision at issue stated:

> All of the following property is hereafter the sole and exclusive property of the Husband, and the Wife hereby waives and transfers to the Husband any interest that she may have in the property:
>
> \* \* \* \* \* \*
>
> (g) Husband's IBM pension and other deferred compensation plans, if any.

*Id.* at 80. The agreement also contained reciprocal releases made by the husband. *Id.* Given the specificity of the waiver, the court denied the wife any right to her former husband's benefits.

Reaching the opposite result, the Sixth Circuit Court of Appeals in *McMillan*, 913 F.2d 310, in dicta, examined language in a divorce settlement to determine whether it was sufficiently specific to be a valid waiver of the ex-spouse's beneficiary interest. The provision stated:

> Each party hereby waives, relinquishes and forever releases the other party of any and all claims he or she may have against

the other for dower, curtesy, alimony, maintenance, property settlement, and all other claims of any kind and nature ...; it being understood and mutually agreed between the parties that this Settlement Agreement represents a full, final and complete settlement of any and all claims of every kind, character and description which the other party may have against the other.

*Id.* at 312 n. 2. The court found that the waiver was not sufficiently specific: "The waiver provision in [wife's] divorce settlement, however emphatic, does not specifically refer to her interest as beneficiary of these ERISA plans." *Id.* at 312. Similarly, the Eighth Circuit appellate court found no waiver in a divorce decree in *Lyman Lumber*, 877 F.2d 692, which contained the following clause: "[Husband] shall have as his own, free of any interest of [wife], his interest in the profit-sharing plan of his employer." *Id.* at 693. Although the clause referred to the profit-sharing plan specifically, it was nonetheless an inadequate waiver, because "[i]t did not, however, specifically refer to and modify the beneficiary interest." *Id.* at 693–94.

The Seventh Circuit considered this issue in *Fox Valley*, 897 F.2d 275, finding a valid waiver in a divorce settlement provision stating that the ex-wife waived "any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party." *Id.* at 277. The court found that the waiver was an explicit mutual waiver of each party's rights to the other's pension plan. *Id.* at 280. The court distinguished the *Lyman* decision as follows:

> The *Lyman* court found that the general wording of the divorce decree did not specifically refer to and modify the beneficiary interest of the participant's ex-wife. The Eighth Circuit therefore affirmed the district court's award of benefits to the primary beneficiary.... Unlike the factual setting in *Lyman*, [wife] and [husband-participant] in the present case signed a voluntary property settlement agreement that included an explicit mutual waiver of

any rights each might have had in the other's pension plan.

*Id.* at 280; *see also Brandon,* 18 F.3d at 1327 ("We follow the courts in *Fox Valley* and *Lyman Lumber* by requiring under federal common law that any waiver of ERISA benefits be explicit...."); *Czarski,* 928 F.Supp. at 723 (divorce decree provision which waived the rights of either party to "the proceeds of policies or contracts of life insurance, endowments or annuities upon the life of the other as a named beneficiary" and to any "pension, annuity or retirement plan benefit of the other" held to be a sufficiently specific waiver).

In the case *sub judice,* the Estate argues that the waiver in the Divorce Stipulation meets the requirement of specificity as to the benefits being waived. The waiver clause, at paragraph 15, provides as follows:

> Each party acknowledges that the provisions herein made for him or her are fair, adequate, reasonable and satisfactory to him or her. Accordingly, each accepts the same in full and final settlement and satisfaction of any and all claims and rights that each may now or hereafter have against the other for (1) support and maintenance and (2) in any divorce proceeding in lieu of property division, distribution and assignment pursuant to 13 *Del.C.* § 1513, or otherwise, and in lieu of any alimony payments, temporary or permanent, pursuant to 13 *Del.C.* §§ 1509, 1512, 1518 or otherwise.

D.I. 17 at Exh. C, ¶ 15. As an initial matter, by its own terms, this clause is limited to claims relating to support and maintenance, and to claims in any divorce proceeding. Nothing in the language indicates that any other claims not expressly mentioned are also waived. Secondly, and perhaps more importantly, there is no mention of waiver of the Annuity Fund benefits in dispute. As the discussion above demonstrates, the waiver must *specifically* mention the plan under which the beneficiary is releasing his or her rights. None of the cases would support a finding of waiver in the general wording of paragraph 15. The Estate argues that the final clause "or otherwise" should be construed to encompass the Annuity Fund bene-

fits in dispute. The Court disagrees. This case is clearly distinguishable from cases such as *Altobelli,* 77 F.3d at 81, and *Fox Valley,* 897 F.2d at 280, in which the waivers found to be valid specifically mentioned the pension plan benefits being waived. Any other interpretation of paragraph 15 would run counter to the uniform requirement of federal common law of *specific* reference to the ERISA governed plan. Therefore, under federal common law, Marie's purported waiver is invalid.

Having found that Marie has not waived her rights to the benefits in Michael's Annuity Fund, the Court concludes that the Annuity Fund proceeds must pass to Marie. It is therefore unnecessary to consider the arguments raised in the alternative by Kevin, in the event the Court found against Marie.

### IV. Conclusion

Kevin and Marie's motion for summary judgment will be granted as to Marie, and denied as to Kevin. The Estate's motion for summary judgment will be denied. An appropriate order will be entered.