OPINION *Page 2 
{¶ 1} Appellant Deborah Nation, as the executrix of the estate of Darvin Ellsworth Clay, appeals a post-divorce enforcement decision by the Belmont County Court of Common Pleas. Darvin Clay and Appellee Linda L. Clay were divorced in 2005. In the decree, Darvin was ordered to pay Linda $9,975.62 from his 401(k) retirement fund within 30 days of the divorce. Darvin died almost a year later without having paid Linda pursuant to decree and also without removing Linda as the beneficiary of his pension fund. On April 28, 2006, Appellant filed a motion to force Linda to turn over the proceeds of the 401(k) to Darvin's estate. Appellant alleged that Linda should not receive any proceeds from the 401(k) account except for the $9,975.62 specified in the decree, and that she waived any rights to the remaining funds by virtue of the divorce action. The trial court issued immediate orders to prevent Appellee from disposing of any funds she might have received from the 401(k) account. The trial court ultimately ruled, though, that no Qualified Domestic Relations Order (QDRO) was ever requested or filed, and by law, the beneficiary of the funds in issue was the person named in the 401(k) plan. The court found that Appellee had not waived any rights to the proceeds of the 401 (k) plan, and that Darvin could have changed the beneficiary at any time if he had so desired. The court enforced the award of $9,975.62 to Appellee, but did not accept jurisdiction to rule on any remaining funds from the 401(k) plan.
 {¶ 2} Appellant contends that the trial court did have jurisdiction over the actual 401(k) funds, if not over the plan itself, and that it erred by failing to find that Appellee waived her right to any remaining interest in the account. Appellant's *Page 3 
arguments are not persuasive. There was no discussion in the divorce proceedings about either party preparing a QDRO in order to force the 401(k) plan administrator to act, and there is no indication that Darvin was prevented from changing the beneficiary on his 401(k) plan if he so desired. Federal law establishes that the beneficiary of the 401(k) plan is the person designated as beneficiary under the terms of the plan, and this is the same conclusion reached by the trial court. The judgment of the trial court is affirmed.
 HISTORY OF THE CASE {¶ 3} Linda and Darvin Clay were married in 1969. The Clays had children, but they were emancipated at the time of the divorce. In 1998, Darvin moved out of the marital home to live with Deborah Nation. On February 17, 2004, Darvin filed a complaint for divorce in the Belmont County Court of Common Pleas. The case was heard by a magistrate. The major assets of the marriage were the marital home and Darvin's 401(k) pension plan. In the divorce decree, dated April 28, 2005, Appellee Linda Clay was awarded the marital home valued at $39,500. The court determined that Darvin's 401(k) pension was worth $59,451.24, that the pension was a marital asset and that all assets should be divided equitably. The court awarded the amount of $9,975.62 as Linda's share of the pension. The divorce decree contained this order: "Darvin is ordered to have his 401(K) make the appropriate payment to Linda pursuant to this order within 30 days of Judge Sargus' final Judgment Entry, Decree of Divorce." The divorce decree did not state that either party or the court should prepare a QDRO. *Page 4 
 {¶ 4} The divorce decree also contains a reference to spousal support. The court determined that the parties were close to retirement age and that Darvin could not afford spousal support at the time. The court also determined that any support to Linda would be deducted, dollar for dollar, from her Supplemental Security Income (SSI) based on federal law current at the time. Thus, the court did not award spousal support immediately, but retained jurisdiction in the event that spousal support might become a practical benefit to Linda at sometime in the future. The court also determined that spousal support would have been appropriate for seven to eight years, if it was feasible to award.
 {¶ 5} The divorce decree was not appealed by either party.
 {¶ 6} Darvin died on March 26, 2006. On April 28, 2006, Deborah Nation, acting as executrix of Darvin's estate, filed a motion to enforce the divorce decree. She alleged that Darvin forgot to delete Appellee as the beneficiary of his 401(k) plan, and that Appellee should not receive any proceeds from the 401(k) account except for the $9,975.62 specified in the divorce decree. On April 28, 2006, the court issued emergency orders preventing Linda from transferring or disposing of any of the pension fund in excess of $9,975.62. The case was assigned to a magistrate, who held a hearing on May 16, 2006. This hearing transcript is not part of the record on appeal. The parties filed supporting briefs, and the magistrate's decision was filed on June 22, 2006.
 {¶ 7} The magistrate relied on a number of federal cases to conclude that the Employee Retirement Income Security Act of 1974 ("ERISA") was relevant to the facts of the case, and ERISA mandated that the beneficiary of the pension funds was *Page 5 
the person designated as beneficiary on the fund documents. The magistrate's decision noted that there was no QDRO in this case that otherwise might have a bearing on the distribution of the pension funds. The magistrate found no indication that Linda waived any right to be designated as beneficiary of the pension fund. The magistrate found that there was nothing in the divorce decree giving the trial court jurisdiction to determine the ultimate beneficiary of the 401(k) plan, and that Darvin could have changed the beneficiary designation anytime after 1998, when he separated from Linda. The magistrate also noted that Darvin had almost one year to change the beneficiary designation after the divorce decree was issued, and he failed to do so. The magistrate held that it had jurisdiction to enforce its order that Darvin pay Linda $9,975, but that it did not have jurisdiction to change the beneficiary designation of the 401(k) plan or to make any further orders regarding that fund.
 {¶ 8} Appellant filed objections to the magistrate's decision, and the trial court affirmed the magistrate's decision in its final order of July 12, 2006. This timely appeal followed on August 11, 2006.
 {¶ 9} There are two assignments of error. They will be treated together, because the issues are interrelated.
 ASSIGNMENT OF ERROR NO. 1 {¶ 10} "The trial court erred in declining to exercise jurisdiction to determine whether the remainder of the 401(K) awarded to Darvin should belong to Linda as the designated beneficiary or to the estate of Darvin Clay as the lawful owner."
 ASSIGNMENT OF ERROR NO. 2 *Page 6 {¶ 11} "The trial court erred in holding that `there was no plain language of a waiver by Linda in the divorce regarding any of Darvin's remaining interest in his 401(K),' when in fact, Linda testified under oath that `I don't think I should get all that pension,' during the final divorce hearing. Furthermore, no evidence was ever presented that Linda Clay would ever get more than 50% of the pension. An award of the entire pension to Linda Clay is not only contrary to the intent of the parties, it is contrary to law."
 {¶ 12} The two issues on appeal are integrally related. Appellant contends that Linda waived her rights to the proceeds of the 401(k) account through statements she made during the divorce proceedings, and that the trial court had jurisdiction to enforce that waiver. Appellant contends that federal preemption, by way of ERISA law, does not prohibit the trial court from enforcing the terms of the divorce decree.
 {¶ 13} There are at least two standards of review that might apply to this appeal. The first involves the review of the legal question presented by Appellant, namely, whether federal ERISA law applies to the facts of this case and whether federal law preempts any state law that might have otherwise had a bearing on resolving the dispute. Questions of law are reviewed de novo on appeal. Graham v. Drydock Coal Co.
(1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949. The second standard of review involves the manner in which the trial court interpreted and enforced its prior divorce decree, and whether it properly concluded that the divorce action did not constitute a waiver of Linda's rights regarding the 401 (k) fund as part of the divorce. A trial court has inherent power to interpret and enforce its own *Page 7 
judgments, and the trial court's enforcement decisions are reviewed for abuse of discretion. Cramer v. Petrie (1994), 70 Ohio St.3d 131, 133,637 N.E.2d 882; State ex rel. Adkins v. Sobb (1988), 39 Ohio St.3d 34,35, 528 N.E.2d 1247; Paradise Homes, Inc. v. Limbacher, 5th Dist. No. 2005AP100072, 2006-Ohio-1676, ¶ 23.
 {¶ 14} In a divorce, the largest asset is often the retirement fund of the parties. Company retirement plans are usually governed by federal law under ERISA, which normally supersedes, "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title and not exempt under Section 1003(b) of this title." Section 1144(a), Title 29, U.S.Code; see also,Egelhoff v. Egelhoff (2001), 532 U.S. 141, 121 S.Ct. 1322,149 L.Ed.2d 264. There are specific procedures available under federal law for pension benefits to be paid to alternate beneficiaries as part of a divorce. This is usually done through a Qualified Domestic Relations Order, or QDRO, " `which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan * * *.' Employee Retirement Income Security Act of 1974 (`ERISA'), Section 206(d)(3)(B)(i)(I) and Section 414(p)(1)(A)(i), Title 26, U.S.Code. Under the Retirement Equity Act of 1984 (`REA'), the QDRO allows the transfer of retirement benefits to an alternate payee (generally the former spouse) without triggering the anti-assignment or alienation provision of a retirement plan." (Footnotes omitted.) Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 179-180,559 N.E.2d 1292.
 {¶ 15} A domestic relations court, though, is not required to use a QDRO in a divorce whenever the marital assets include a pension. The QDRO is a tool available *Page 8 
to the trial court to order the administrator of the pension plan to actually redirect benefits to another payee, if that is necessary as part of the divorce. The trial court may avoid using a QDRO by designating other marital assets to offset the value of the pension, or by requiring one party to pay the equivalent value of those benefits or assets to the other party, rather than by requiring the pension plan administrator to pay an alternate payee. Obviously, there is a distinct benefit in ordering the plan administrator to pay the alternate payee, because it alleviates the need of the divorced parties from continuing to be directly involved in making payments to each other. Be that as it may, trial courts have a number of ways to effectuate the division of pension benefits in a divorce other than using a QDRO, and in this case, there is no QDRO and there was no appeal from the divorce decree questioning or challenging the lack of a QDRO.
 {¶ 16} The trial court determined in the divorce that Linda was owed $9,975 from Darvin as part of the equitable division of marital property, and that the money should come from Darvin's 401(k) fund. The divorce decree specifically ordered Darvin, and not the pension plan administrator, to make the arrangement for the payment of $9,975 to Linda from his 401(k) plan. (4/28/05 Divorce Decree, p. 4.) The record does not indicate a need for a QDRO in this case, since Darvin, and not the 401(k) plan administrator, was ordered to make this payment. Furthermore, even if the trial court had ordered the 401(k) plan administrator to make the payment, such an order would have been merely dicta unless the court and the parties followed the specific procedures set forth in ERISA, such as a creating a proper QDRO. Regardless, the record reflects that the court ordered Darvin to arrange for the *Page 9 
$9,975 payment, and the trial court clearly had jurisdiction over Darvin in the divorce proceedings.
 {¶ 17} As the trial court made clear in the post-judgment enforcement proceedings, the divorce decree did not order Darvin to change (or not change) the beneficiary of the 401(k) plan, nor did it order Linda to renounce or waive her interest in the remainder of the 401(k) plan. Other than the court ordered amount of $9,975, Darvin was free to do whatever he wanted with the remainder of the 401(k) plan, and he could have changed the name of the beneficiary at any time if he had so desired. We cannot presume Darvin desired a change. There is no indication in the record that Darvin was prohibited or otherwise discouraged from changing the beneficiary of his 401(k) plan before he died. There is no evidence of fraud or misconduct on Linda's part that prevented Darvin from changing the beneficiary designation. It was not up to the trial court to act as Darvin's attorney to counsel him about how to manage the terms and future disposition of his pension plan.
 {¶ 18} The main support Appellant cites as proof that Darvin's estate should receive the bulk of the 401(k) proceeds is that Linda supposedly waived her rights to the proceeds during the divorce hearings. Actually, Appellant relies on only one part of one comment Linda made at the divorce hearing. Linda's full relevant testimony was: "No, I don't think I should get all that pension, sir. I do believe that I should get a year and a half of spousal support out of that pension. That I do believe that. [sic] I think that's fair." (3/24/05 Tr., p. 28.) Appellee correctly points out, though, that this is nothing more than an expression of Linda's opinion during the hearing, and is not part of any agreement between the parties or part of any court order. It certainly is *Page 10 
not a clear waiver of any rights. "A party asserting a waiver must prove a clear, unequivocal, decisive act by the party against whom the waiver is alleged." Automated Solutions Corp. v. Paragon Data Sys., Inc., 167 Ohio App.3d 685, 2006-Ohio-3492, 856 N.E.2d 1008, ¶ 28. Appellant cites no caselaw that would convert an offhand comment during trial into a contractual waiver of a known right.
 {¶ 19} Appellant cites two cases from Michigan in an attempt to support her argument. The first is Moore v. Moore (2005),266 Mich.App. 96, 700 N.W.2d 414, from the Michigan Court of Appeals. The second is a later decision on the same topic by the Michigan Supreme Court,Sweebe v. Sweebe (2006), 474 Mich. 151, 712 N.W.2d 708. Obviously, Michigan caselaw is not binding precedent in Ohio. Nevertheless, Appellant contends that there are persuasive arguments in the Michigan opinions that should be applied in this appeal.
 {¶ 20} Sweebe presents the current controlling law from the Michigan Supreme Court. In Sweebe, the parties were divorced in 1986. There was specific language in the divorce decree in which both parties declaimed any present or future interest in any insurance contracts of the other party. Mr. Sweebe was covered by a life insurance policy provided by his employer, but he failed to change the name of the beneficiary after the divorce. When he died in 2001, the insurance plan administrator paid the proceeds to the ex-wife, who was the named beneficiary. Mr. Sweebe's estate filed a motion to enforce the waiver in the divorce decree.
 {¶ 21} The trial court denied the motion, holding that ERISA preempted the waiver. The Michigan Supreme Court, though, held that the waiver was effective. Sweebe acknowledged that the insurance policy was an employee benefit plan *Page 11 
governed by ERISA under Section 1003(a), Title 29, U.S.Code. The court noted that ERISA supersedes all state laws that relate to an employee benefit plan. Section 1144(a), Title 29, U.S.Code. ERISA provides that a plan administrator must distribute the proceeds of an insurance policy to the named beneficiary. Section 1104(a)(1)(D), Title 29, U.S.Code. A beneficiary, under ERISA, is the person designated by the plan participant as the beneficiary, or the person designated by the default provisions of the plan itself. Section 1002(8), Title 29, U.S.Code. The court held that the plan administrator properly distributed the proceeds to the decedent's ex-wife. The court did not stop there, though. The court held that, since the proceeds were already distributed, ERISA was no longer at issue, and the remaining issue to be decided was whether the ex-wife could continue to hold the funds in light of the waiver provisions of the divorce decree. Sweebe at 155.
 {¶ 22} The Michigan Supreme Court examined whether there was a valid waiver in the divorce decree. The court held that a waiver must be explicit, voluntary and made in good faith. Id. at 157. The court examined the ex-Mrs. Sweebe's waiver, and found that it explicitly extinguished any interest, including any future interest, in Mr. Sweebe's insurance policies. The waiver stated that, "the parties shall in the future hold all such insurance free and clear from any right or interest which the other party now has or may have had therein, by virtue of being the beneficiary, contingent beneficiary or otherwise." (Emphasis omitted.) Id. at 158. The court held that this was a sufficient waiver, and required the ex-wife to deliver the proceeds to the decedent's estate. *Page 12 
 {¶ 23} It should be noted that, in Sweebe, the Michigan Supreme Court acknowledged that it was disagreeing with the holding of the Sixth Circuit Court of Appeals, which had come to the opposite conclusion in two separate cases. McMillan v. Parrott (C.A.6, 1990), 913 F.2d 310;Metro Life Ins. Co. v. Pressley (C.A.6, 1996), 82 F.3d 126. The position of the Sixth Circuit is that ERISA preempts all state law directly or indirectly relating to employee benefit plans, and that ERISA itself contains all the rules of law necessary to determine who is the proper beneficiary of an employee benefit plan. Pressley at 129. InPressley, the parties were divorced in 1984, and the divorce decree stated that the parties would thereafter own all items of personal property, including pension or retirement funds, free and clear of any claims by the other party, and that they would hold each other harmless for any debt thereon. Id. at 128. The decree stated that the rights of one party in any insurance policy of the other party were extinguished unless otherwise preserved by the divorce decree. We also note thatPressley involved parties from Michigan, who were divorced in Michigan, and that Pressley was interpreting Michigan state law as well as federal law.
 {¶ 24} Alvin Pressley subsequently died in 1993, and had not changed the beneficiary of the life insurance plan provided by his employer. His ex-wife filed a claim to receive the insurance proceeds. Mr. Pressley's estate filed a claim for the same proceeds. The insurance company deposited the proceeds with the court and the court was asked to determine the proper beneficiary. Id. The Sixth Circuit Court of Appeals held federal law supersedes all state laws that "relate to" an ERISA plan, and that "relate to" is defined broadly to mean, "if it has a connection with or *Page 13 
reference to such plan." Id. at 129, citing Shaw v. Delta Air Lines,Inc. (1983), 463 U.S. 85, 96-97, 103 S.Ct. 2890, 77 L.E.2d 490.
 {¶ 25} The Pressley court examined a number of federal cases that relied on federal common law for the principle that an ex-spouse was permitted to waive her interest as beneficiary in an insurance policy held by the other ex-spouse. Id. at 129. The Sixth Circuit, though, flatly rejected this approach. The proper question, according toPressley, was whether, under the provisions of ERISA, the former spouse of a decedent has properly waived her interest as designated beneficiary of the decedent by way of a broad waiver of rights in a divorce decree. Id. at 130. The court held that an ERISA plan administrator is required to discharge his duties, "in accordance with the documents and instruments governing the plan[.]" Section 1104(a)(1)(D). The court found this to be a clear directive that plan documents control the outcome and define not only who must receive the funds, but also who is the actual beneficiary. Id. The court determined that the decedent had not changed the designated beneficiary on his insurance plan, thus, his ex-wife was the proper beneficiary.
 {¶ 26} The Pressley court was aware of a Michigan statute which required a judgment of divorce to determine the rights of the wife with respect to any insurance policy of the husband in which the wife is named as a beneficiary. Mich.Comp. Laws 552.101(2). Alvin Pressley's estate tried to rely on this law to show that under Michigan law, a divorce decree necessarily creates a waiver by each party of any rights in the other party's insurance policies, whether or not there are additional express waivers as part of the divorce proceedings. ThePressley court did not *Page 14 
appear to find this Michigan statute to have any relevance to the outcome of the case, and relied solely on federal law to determine the beneficiary.
 {¶ 27} Appellant's reliance on the Michigan state caselaw is inapposite for a number of reasons. First, Michigan's divorce statutes are apparently different than Ohio's in that certain pension and insurance waiver issues are required to be resolved in the divorce decree. Second, the Sweebe case, decided by the Michigan Supreme Court, contained an express waiver of all present and future interest in the other party's insurance policies. In the instant case, Appellant is urging that we find an implicit waiver by reference to the general terms of the division of marital property and by relying on one portion of one comment that Linda made stating that she did not think she should get all of the pension, but that she should get spousal support instead. Third, Sweebe rejected what should have been controlling caselaw on a federal issue from the Sixth Circuit Court of Appeals (since the Sixth Circuit has jurisdiction over Michigan as well as Ohio). If given a choice between relying on the analysis of a Michigan state law opinion interpreting Michigan law and federal ERISA law, or relying on the authority of the Sixth Circuit Court of Appeals on the question as to whether federal law preempts Ohio law, it would appear prudent to accept the view of the Sixth Circuit. The Sixth Circuit, in Pressley, clearly held that federal law determines who is the rightful beneficiary in these cases: the person named on the 401(k) plan beneficiary card or who is otherwise designated as the default beneficiary under the terms of the plan.
 {¶ 28} Appellee also correctly states that, even when ERISA is not involved, for a party to a divorce to be deemed to have waived rights to the insurance policies *Page 15 
of the other party, there must be a separation agreement that is made part of the divorce, and the divorce decree must, " `plainly indicate' the elimination of the named beneficiary from all rights to the life insurance proceeds." Phillips v. Pelton (1984), 10 Ohio St.3d 52, 53,461 N.E.2d 305, citing Cannon v. Hamilton (1963), 174 Ohio St. 268, 22 O.O.2d 331, 189 N.E.2d 152. The general rule in Ohio is that a divorce does not automatically defeat the right of a named beneficiary to receive the proceeds of a former spouse's life insurance policy.Cannon at paragraph one of the syllabus. In order to effectuate a change of beneficiary, the insured must ordinarily follow the procedure directed in the policy of insurance. Id. at paragraph two of the syllabus. Unless a clear and plain waiver is made as part of a separate agreement in the divorce decree, the intentions of the insured as expressed in the designation of beneficiary will normally be upheld.Phillips at 53.
 {¶ 29} This Court, in a fairly recent case, held that a separation agreement waiving rights to an ERISA controlled life insurance policy is not a replacement for a valid QDRO, and that a waiver of rights in the separation agreement and corresponding divorce decree cannot be enforced without a valid QDRO. Dailey v. Lohr (Mar. 20, 2002), 7th Dist. No. 00 CA 27. In Dailey we relied on a variety of federal cases, includingMcMillan, cited earlier. In the matter before us, the trial court also relied on Dailey as part of the basis for its judgment. Appellant's argument does not persuade us to disregard the rules of stare decisis and overrule our own fairly recent holding in Dailey.
 {¶ 30} Appellee also urges that Appellant's argument depends on certain assumptions being made about the 401(k) plan that were never established in the *Page 16 
trial court proceedings. There does not appear to be any evidence that Linda was actually the beneficiary of the plan on the record, here. There was some indication at oral argument that Linda received the 401 (k) plan funds sometime prior to the filing of this appeal, but that fact is not otherwise established in the record. On the basis of this record, it appears Appellant wanted the trial court to rule on the abstract question as to whether Linda could receive the proceeds of the 401(k) plan if she was listed as the beneficiary. No evidence was set forth during the trial proceedings that any funds had been distributed by the 401(k) plan. Without some type of evidence to this effect, the trial court could hardly rule in Appellant's favor, even if the court had agreed with Appellant's abstract legal analysis. Since no evidence was introduced that the proceeds of the 401(k) plan were distributed, the trial court was correct on that basis alone in overruling Appellant's post-decree motion.
 {¶ 31} In fact, while the trial court had the jurisdiction to enforce its earlier order that Appellee receive $9975.62 in the divorce proceeding, this is where the court's jurisdiction ended. Whether or not the entire proceeds of the 401(k) were distributed, because it is settled that ERISA applies to these benefits, the trial court had no jurisdiction to address them in any way. Thus, any reference to the 401(k) would amount to mere dicta on the part of the court.
 {¶ 32} For all the aforementioned reasons, Appellant's assignments of errors are overruled. The record reflects that Darvin Clay was not prevented from changing the beneficiary of the proceeds of the pension fund if he had so desired. Apparently, he did not. The trial court properly determined that Darvin owed Linda $9975 as part of the divorce decree. The trial court had no jurisdiction to make any further rulings *Page 17 
as to the ownership of the disputed funds due to operation of ERISA. Thus, the decision of the trial court is affirmed.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1