Jacqueline M. EMMENS, in her capacity as administratrix of the Estate of Malcolm C. Emmens, Appellant,

v.

Marla JOHNSON, Appellee.

No. 01–95–00673–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 4, 1996.

Rehearing Overruled May 30, 1996.

---

Linda L. Lelly, L. Celeste Sawhook, Houston, for appellant.

Edward W. Engel, Houston, for appellee.

Before O'CONNOR, WILSON and COHEN, JJ.

## OPINION

COHEN, Justice.

Emmens appeals the award of a decedent's profit-sharing plan to appellee Marla Johnson. We reverse and render.

### FACTS

Decedent Malcolm Emmens participated in a Prudential–Bache profit-sharing plan that was held solely in his name and named his wife, Marla Johnson, the beneficiary. Dece-

dent and Johnson divorced in 1988. The divorce decree states:

> Respondent [decedent] is awarded the following as Respondent's sole and separate property, and Petitioner is hereby divested of all right, title, interest, and claim in and to such property:
>
> . . .
>
> 3. Any and all sums of cash in the possession of or subject to the sole control of Respondent, including money on account in banks, savings institutions, or other financial institutions, which accounts stand in Respondent's sole name or from which Respondent has the sole right to withdraw funds or which are subject to Respondent's sole control.[1]

The divorce decree does not expressly refer to the profit-sharing plan. Appellant contends this language waives Johnson's rights in the plan.

At divorce, the plan's value was $77. Decedent never changed the beneficiary, nor did he redesignate Johnson as the beneficiary, although he could have done so any time. The account's value later rose to about $18,000.

The governing instrument of the profit-sharing plan provides:

> The designation form last accepted by the Plan Administrator during the designating person's lifetime before such distribution is to commence shall be controlling and, whether or not fully dispositive of the vested portion of the Account of the Participant involved, thereupon shall revoke all such forms previously filed by that person.

---

1. The decree contains an identical provision divesting Malcolm Emmens of the same property owned by Marla Johnson. In addition, the decree contains mutual provisions divesting both spouses of any interest in life insurance policies on the other's life.

2. TEX.FAM.CODE ANN. § 3.633 (Vernon 1993) provides:

> (a) In a decree of divorce or annulment the court shall determine all rights of both spouses in any pension, retirement plan, annuity, or other form of savings, bonus, profit-sharing, or other employer or financial plan of an employee, whether or not self-employed, in the nature of compensation or savings.

After Emmens died and before benefits were paid, appellant notified Prudential that under TEX.FAM.CODE ANN. § 3.633 (Vernon 1993),[2] the divorce terminated the designation of Johnson as beneficiary. Thereafter, appellant sued to receive plan benefits for the estate.

The trial judge first ruled for appellant, but then reheard the cause and ruled that Johnson, the ex-wife, was the proper beneficiary.

## ANALYSIS

Emmens contends she should receive the proceeds because TEX.FAM.CODE ANN. § 3.633 and federal common law mandate that a former spouse who was designated as beneficiary during marriage, but not redesignated after divorce, is not entitled to death benefits.

### Applicable Law

■ This issue is governed by federal law because the profit-sharing plan is covered by ERISA. *See* 29 U.S.C. § 1002(2)(A), (3); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989). ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. 1144(a). Because designation of beneficiaries plainly relates to ERISA plans, state law is superseded. *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1325 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995); *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990). Consequently, although Family Code section 3.633

> (b) If a decree of divorce or annulment is rendered after a spouse has designated the other spouse as a beneficiary under a financial plan described by this section in force at the time of rendition, a provision in the plan in favor of the designated spouse is not effective unless:
>
> (1) the decree designates the former spouse as the beneficiary;
>
> (2) the designating spouse redesignates the former spouse as the beneficiary after rendition of the decree; or
>
> (3) the former spouse is designated to receive the proceeds or benefits in trust for, on behalf of, or for the benefit of a child or dependent of either former spouse.

would, but for ERISA, control and compel reversal of this case, ERISA preemption requires us to follow federal law.

### Federal Statutory or Common Law?

We "look to either the statutory language [of ERISA] or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law." *Brandon*, 18 F.3d at 1325 (quoting *McMillan*, 913 F.2d at 311). Courts differ on whether ERISA itself or federal common law controls. *Brandon*, 18 F.3d at 1325.

### ERISA—Federal Statutory Law

The Sixth Circuit has held that section 1104(a)(1)(D) of ERISA specifically controls. *McMillan*, 913 F.2d at 311–12. That section requires that a plan be administered "in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104(a)(1)(D). *McMillan* held that section 1104 requires administrators to follow the plan documents. Consequently, the court required the administrator to follow the plan documents, i.e., to pay the designated beneficiary (the former spouse) despite the divorce. 913 F.2d at 311–12. Resolving the conflict between the plan documents that favored the ex-wife and the divorce decree that divested the ex-wife of any interest in the plan, the court held that the "clear statutory command [of section 1104], together with the plan provisions, answer the question; the documents control, and those name [the ex-wife]." *Id.* Thus, the rule in *McMillan* would require us to affirm because here, as there, the plan documents require the ex-wife, Johnson, to be paid. *Accord Fox Valley & Vicinity Const. Workers Pension Fund v. Brown*, 897 F.2d 275, 282–285 (7th Cir.) (en banc) (dissenting opinions), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).

### Federal Common Law

Several federal appellate courts have looked to, or created, federal common law because they found, contrary to *McMillan*, that no express ERISA provision controls

this issue. *Mohamed v. Kerr*, 53 F.3d 911, 913 (8th Cir.1995); *Brandon*, 18 F.3d at 1326 (5th Cir.); *Fox Valley*, 897 F.2d at 281 (7th Cir.) (majority opinion); *Lyman Lumber*, 877 F.2d at 693 (8th Cir.). The Fifth Circuit in *Brandon* examined federal common law to determine whether a spouse designated during marriage as an ERISA beneficiary waived her benefits in the agreed divorce property settlement. Mr. Brandon designated his wife as the beneficiary on a group life insurance policy taken out by his employer. Their divorce decree provided that each spouse would keep their own "employment benefits." However, the decree did not mention the life insurance policy, much less change the beneficiary designation, as plan documents required. After reviewing the statutory approach of *McMillan* and the common law approach of *Fox Valley*, 897 F.2d at 280, the court concluded that the "long and venerable history" of federal respect for state domestic relations law compelled it to follow federal common law that sought to effectuate the intent of state law. *Brandon*, 18 F.3d at 1326. The court adopted the Texas statute nullifying an insurance beneficiary designation absent a redesignation following divorce,[3] but modified it to require that "any waiver" of ERISA benefits be "explicit, voluntary, and made in good faith." *Id.* at 1326–27. The court found that the ex-wife had "waived" her right to the proceeds of the policy by agreeing to the following divorce decree:

> Petitioner [husband] is awarded the following as Petitioner's sole and separate property, and Respondent [wife] is divested of all rights, title, interest, and claim in and to such property
>
> . . .
>
> (8) Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights relating to any profit sharing plan, retirement plan, pension plan, employee stock option plan, employee savings

---

**3.** Tex.Fam.Code Ann. § 3.632 (Vernon 1993). Although the court adopted section 3.632, which applies only to redesignation of insurance beneficiaries, it is sufficiently similar to section 3.633, which applies to redesignation of financial plan beneficiaries, to guide us in the present case. *See also* Tex.Prob.Code Ann. § 69 (Vernon Supp. 1996) (divorce nullifies provisions in wills favoring former spouses).

plan, accrued unpaid bonuses, or other benefit program existing by reason of Petitioner's past, present, or future employment.

*Id.* at 1323, 1327.

Thus, the ex-wife in *Brandon* lost, because of "waiver," even though: 1) life insurance was not mentioned in the divorce decree, 2) the husband named her a beneficiary after they separated and after the divorce was filed, 3) in the divorce suit, she signed a waiver of citation, had no attorney, and did not appear in court, and 4) after the divorce, the former spouses "continued to see each other and sustained many social contacts." 18 F.3d at 1322–23.

*Brandon* requires any waiver of ERISA benefits to be explicit, voluntary, and made in good faith. *Id.* at 1327. Voluntariness and good faith are not in dispute here; if we follow the federal common law as declared in *Brandon,* the only issue is whether Johnson explicitly waived her rights by consenting to the divorce decree. *Id.*

■ *Brandon* is not controlling, however, because we are not controlled by decisions of the lower federal courts, including the Fifth Circuit. *Penrod Drilling Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex.1993). On questions of federal common law, we are bound to follow only the decisions of the United States and Texas supreme courts. *Id.* The decisions of other federal courts are persuasive authority only. They are entitled to respectful consideration, which we cheerfully grant, and we recognize their superior expertise in federal law, which we have earnestly consulted. Nevertheless, we are entitled to follow the federal common law of any federal circuit that we find persuasive.[4] *Id.* Thus, we proceed to a respectful consideration of the Fifth Circuit's opinion in *Brandon.*

The *Brandon* court first found that the issue of beneficiary designation was preempted by ERISA. *Brandon,* 18 F.3d at 1325. As stated, we agree.

■ The court next considered whether the anti-alienation provision of ERISA prevented the former spouse from waiving her rights by consenting to the divorce decree. For reasons unrelated to this case, the Fifth Circuit found no violation of the anti-alienation statute. *Brandon,* 18 F.3d at 1324. Again, we agree. On this issue, we are persuaded by the Seventh Circuit's *Fox Valley* opinion, which construed the spendthrift or anti-alienation provision of ERISA, 29 U.S.C. § 1056(d)(1), and concluded that it was inapplicable because the marital property agreement was neither an assignment nor an alienation of benefits by the plan participant, the deceased ex-husband; rather, it was a disclaimer of rights by a non-participant in the plan, the ex-wife. Thus, nothing was being spent, assigned, or alienated by a plan participant. *Fox Valley,* 897 F.2d at 279. That is the situation here, as well.

■ Having found that none of ERISA's provisions controlled, the Fifth Circuit proceeded to create federal common law by adopting a significantly modified version of Texas Family Code section 3.632. *Brandon,* 18 F.3d at 1326. We agree with the Fifth Circuit that Texas statutory law provides a firm basis for making federal common law in this case, but we do not agree with *Brandon's* characterization of section 3.632 as a "rule creating a presumption of waiver," *id.,* nor that the modification placed upon Texas statutes by the Fifth Circuit is necessary or desirable. In *Brandon,* the Fifth Circuit said:

> Federal respect for state domestic relations law has a long and venerable history. *When courts face a potential conflict between state domestic relations law and federal law, the strong presumption is that state law should be given precedence....* The law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion. One way our federalist system maintains the integrity of the folkways and mores of localities is

---

4. If there were no federal common law on this issue, or none that we agreed with, the question would arise whether we could make federal common law ourselves. We do so, of course, every time we decide federal constitutional issues or interpret federal law governing claims arising in state court. We need not decide that issue, however, because we choose to follow the federal common law of another circuit.

through the conservation of state control over the creation and separation of families.

*Brandon,* 18 F.3d at 1326 (emphasis added). Although recognizing the "sacrosanct" nature of family relations law and that state courts are "suitably armored to protect the rights at stake in this case," *id.* at 1327, the Fifth Circuit nevertheless concluded that "the Texas redesignation statute [Family Code section 3.632] will not sufficiently protect the interest of beneficiaries. Thus, in our fashioning of federal common law, we modify the adoption of state law to require that any waiver be voluntary and in good faith." *Id.* at 1326. The court stated that its approach "is bolstered by *Lyman Lumber* in which the Eighth Circuit took a similar tack in utilizing a modified state law to breathe life into the federal common law." *Id.*

We believe the Fifth Circuit took the wrong course when it modified Texas law in this respect, and we doubt that the modification is bolstered by *Lyman Lumber.* In *Lyman Lumber,* Minnesota law was adopted and followed—without modification[5]—and Minnesota law is the exact opposite of Texas law. *Lyman Lumber,* 877 F.2d at 693. The *Lyman Lumber* Court stated that in the "closely analogous area of law involving a former spouse's right to recover life insurance benefits, **the general rule is that a divorce does not affect a beneficiary designation in a life insurance policy.**" *Id.* (emphasis added). Texas law is the opposite of the general rule. *See* TEX.FAM.CODE ANN. § 3.632–3.633. Thus, *Lyman Lumber* was no model to follow if the Fifth Circuit wished to show respect for Texas domestic relations law, to preserve the sacrosanct enclave of that law, and to recognize Texas courts as being "suitably armored" to protect those rights.[6] While declaring respect for Texas law, the Fifth Circuit in *Brandon* instead

actually applied Minnesota law, citing *Lyman Lumber,* and Illinois law, citing *Fox Valley. Brandon,* 18 F.3d at 1326. If the Fifth Circuit intended to use *Lyman Lumber* and *Fox Valley* as its guides, it could have done so by applying state law without modification—as those courts did—even though that would have made the waiver issue irrelevant, as we believe it is under Texas law. We choose to follow the federal common law of *Lyman Lumber* and *Fox Valley* by adopting Texas law, without modification, as the controlling rule.

Texas statutory law unambiguously reaches the opposite result of Minnesota and Illinois law, and any ex-spouse wishing to avoid that strong, clear, repeatedly enacted public policy must come within one of the three exceptions in Family Code sections 3.632 and 3.633, which has not been done in this case. Moreover, the supervision of the Texas courts is exercised in every divorce case, and therefore, a property agreement incorporated in a final divorce decree should be entitled to the presumption of regularity, i.e., the presumption that it was entered voluntarily, knowingly, and in good faith. Consequently, we disagree with the Fifth Circuit's conclusion that "wholesale adoption of the Texas redesignation statute will not sufficiently protect the interests of beneficiaries." *Brandon,* 18 F.3d at 1326.

■ Nor do we agree that waiver is the controlling issue. *See Brandon,* 18 F.3d at 1326. Sections 3.632 and 3.633 do not provide for any waiver, nor for any "presumption of waiver." *Id.* Rather, they simply nullify the designation. Beneficiary status is not lost because of the intent of the spouses (other than the intent to divorce), but because of the act of the legislature. It is the legislature's intent, expressed in the statute, not the parties' intent, that controls.[7] More-

---

**5.** The *Lyman Lumber* opinion, unlike *Brandon,* says nothing about modifying state law. It claims to follow Minnesota law.

**6.** The Eighth Circuit in *Fox Valley* followed Illinois law, also apparently without modification. 897 F.2d at 281. As in *Lyman,* state law was the source of the requirement that the "waiver" be voluntary—not federal common law. The waiver analysis was apparently borrowed from state

law, because under Illinois and Minnesota law, a voluntary waiver was necessary to create an exception to the general rule. *Brandon,* 18 F.3d at 1326; *Fox Valley,* 897 F.2d at 280–81.

**7.** This is precisely the analysis used in *McMillan,* where the Sixth Circuit gave conclusive effect to the designation, based on the ERISA statute itself, regardless of the parties' intent. 913 F.2d at 312. We also give conclusive effect to a statute,

over, even if waiver were the issue, the *Brandon* approach has disadvantages. It encourages disputes by requiring a "little" bill of review proceeding in cases like this to determine whether an agreed property settlement was, in respect to ERISA assets, sufficiently voluntary, explicit, and in good faith. We see no need for this procedure. Waiver of ERISA benefits is not against public policy. Beneficiaries may waive their interests. 29 U.S.C. § 1055(c)(1)(A)(i); *Fox Valley,* 897 F.2d at 279. If state courts are "suitably armored" to protect these rights, as *Brandon* states, then the waiver should not have to be proved first in state courts and then again in federal courts. Once is enough.

Some federal opinions, like *McMillan* and the dissents in *Fox Valley,* state that allowing a divorce to nullify a beneficiary designation defeats Congress's intent in enacting ERISA. Judge Easterbrook, dissenting in *Fox Valley,* stated:

> Rules requiring payment to named beneficiaries yield simple administration, avoid double liability, and ensure that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.

897 F.2d at 283. These are serious considerations, and we will consider each separately.

### Simple Administration

We agree with the majority in *Fox Valley* that allowing payment to other than the named beneficiary poses no threat to simple administration. The court declared:

> We also disagree ... that our decision imposes burdensome obligations on plan administrators. No such additional burdens will be imposed because, under the ERISA statutory scheme, a plan administrator must investigate the marital history of a participant and determine whether any domestic relations orders exist that could affect the distribution of benefits. This case arose from just such an investigation. Our decision only requires plan administrators to continue their current practice of thoroughly investigating the marital status of a participant....
> It was suggested ... that under our holding the Fund would be burdened with al-

ways having to investigate to determine if possibly there was a waiver, or something else affecting payment of the benefit to the last-named beneficiary. We place no such investigative burden or responsibility on the Fund beyond what is imposed by statute. Under the facts of this case, we need only hold that the settlement waiver is effective when it becomes known to the Fund before payment.

897 F.2d at 282.

### Avoiding Double Liability

Double liability is not a problem because in Family Code sections 3.632 and 3.633, Texas law gives the plan trustee the same protection that the *Lyman Lumber* court gave—the nullification is effective only if the divorce is known to the fund before payment. Section 3.633(c) provides that when a trustee pays a beneficiary whose designation has been voided by divorce, the trustee is liable to other beneficiaries only if before payment, it received written notice at its home or principal office that the designation was not effective due to divorce and the trustee did not interplead the money into the court's registry. Section 3.632 provides the same protection for insurance companies. Thus, a trustee who follows the ERISA requirements discussed in *Lyman,* and reads its mail, need not fear double liability.

### Ensuring that Beneficiaries get what's coming quickly without "Folderol"

By passing statutes like Family Code sections 3.632 and 3.633, and Probate Code section 69, the legislature has determined what is coming to divorced beneficiaries. Nothing is coming, unless they come within one of the Family Code's three exceptions. It is well within the legislature's discretion (right or wrong) to decide that most people probably don't intend to give their life savings to someone they divorced—or who divorced them.

Moreover, there should be little of the "folderol" feared by the dissenters in *McMillan.* Texas statutes are clear, and existing provisions for summary judgment and for sanctions against frivolous lawsuits should

albeit a state statute, section 3.633, which pro- vides for a result opposite to *McMillan.*

discourage folderol. Moreover, it is worth the price to see that those whom most decedents intend to get their property actually do so. We believe this procedure is less likely to inspire litigation than the Fifth Circuit's test, which requires that property agreements must be shown, years later, to contain voluntary, explicit, and good faith waivers—long after one of the two best witnesses is dead.[8] Better to resolve that in "suitably armored" state courts, while both spouses are still alive.

We adopt TEX.FAM.CODE § 3.633 as the federal common law on this issue. Consequently, we sustain Emmens' point of error.

The trial court's judgment is reversed, and judgment is rendered that Marla Johnson take nothing. If the parties can agree on the amount and nature of the judgment to be granted to Jacqueline Emmens, we will render judgment in accord with the agreement. TEX.R.APP.P. 80(b). Otherwise, we will remand the cause to the trial court with instructions to render judgment granting all proceeds in the decedent's profit-sharing plan to Emmens as administratrix of his estate.

**8.** The Fifth Circuit was obliged to review the divorce proceeding in full to determine that the waiver was voluntary. It examined Wanda's testimony that Richard told her she would remain the beneficiary, *Brandon*, 18 F.3d at 1323; the status of her citation, her court appearance, and her representation by counsel, *id.*; the degree of "mutual social contacts" between the divorced spouses, *id.*; and the language of the decree, *id.* Finally, the *Brandon* court approved the property settlement, finding it was "quite generous" to Wanda. *Id.* at 1327. This is the "folderol" that the *Fox Valley* dissenters sought to avoid. Our approach avoids it by following section 3.632.