**Patsy KEEN, Petitioner,**

v.

**Diana WEAVER, Independent Executrix of the Estates of Francis J. Weaver and Rita Marie Wilson Weaver, Respondent.**

No. 01–0447.

Supreme Court of Texas.

Argued Oct. 9, 2002.

Decided June 19, 2003.

Maurice Bresenhan, Jr., Cynthia Keen Perlman, Pascal Paul Piazza, Zukowski & Bresenhan, Houston, for petitioner.

Steven W. Sloan, Russell George Gully, Thompson & Knight LLP, Steven J. Pawlowski, for respondents.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice SCHNEIDER and Justice SMITH joined.

In this case, an ERISA pension plan participant designated his wife as the plan's primary beneficiary. The couple later divorced and, in an agreement incorporated in the divorce decree, the former wife waived any interest in the plan, agreeing that it would be the participant's sole property. When the participant died some thirteen years later without changing his beneficiary designation, the former wife and the participant's alternative beneficiary lodged competing claims to the plan proceeds. We must decide whether ERISA precludes a pension plan beneficiary from waiving an interest in the plan. We conclude that it does not, and hold that the former wife's waiver is effective. Accordingly, we affirm the court of appeals' judgment.

## I

Frank Weaver and Patsy Keen married in 1967. During the marriage, Frank purchased two annuity plans as part of his employee benefits—a Teacher's Insurance and Annuity Association Contract and a College Retirement Equities Fund (TIAA-CREF). It is undisputed that these annuity plans are "employee pension benefit plans," as defined by the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1002(2)(A). Frank named Patsy as the plans' primary beneficiary and his mother, Rita Weaver, as the contingent beneficiary. Frank and Patsy divorced in

1982. The divorce decree incorporated an agreement incident to divorce that divided the couple's estate and awarded Frank the TIAA–CREF plans as his sole and separate property. Frank never changed the plans' primary beneficiary designations.

Frank married Diana Weaver in 1983, and they remained married until Frank's death in 1995. Relying on the beneficiary designation in the plan documents, the plan administrators paid part of the death benefits to Patsy. Rita Weaver, as the contingent beneficiary, sued Patsy and TIAA–CREF for breach of contract, conversion, and unjust enrichment, claiming that she was entitled to the annuity proceeds because Patsy had waived entitlement to the benefits in the divorce decree. Rita died while the suit was pending, and Diana Weaver, as independent executrix of Frank's and Rita's estates, continued the suit. TIAA–CREF interpleaded the remaining benefits and obtained an order absolving them from any further liability on the plans other than to pay the benefits according to the final judgment. Patsy counterclaimed, asserting entitlement to the proceeds as the designated beneficiary.

After a bench trial, the district court held that Patsy was entitled to the plan proceeds. The court of appeals reversed, however, holding that the Texas "redesignation statute," although preempted by ERISA, applied as federal common law to revoke Patsy's beneficiary designation after divorce and redesignate Rita Weaver as the plan beneficiary. 43 S.W.3d 537, 544. This holding comports with the court of appeals' decision in *Emmens v. Johnson*, 923 S.W.2d 705, 707–08 (Tex.App.-Houston [1st Dist.] 1996, writ denied), but conflicts with *Heggy v. Am. Trading Employee Ret. Account Plan*, 56 S.W.3d 280, 283–85 (Tex.App.-Houston [14th Dist.]

2001, no pet.). Those courts, and the court of appeals here, all agree that ERISA preempts the Texas redesignation statute, but they disagree on what happens given ERISA preemption. Like the court of appeals in this case, the Emmens court adopted the Texas redesignation statute as federal common law and held that a divorce automatically revokes a former spouse's beneficiary designation. *Emmens*, 923 S.W.2d at 712. In *Heggy*, on the other hand, the court held that ERISA requires the plan documents to control regardless of the circumstances and precludes a former spouse's contractual waiver of plan proceeds. *Heggy*, 56 S.W.3d at 283–85. We granted Patsy's petition for review to resolve this conflict among our courts of appeals.

## II

Section 9.302 of the Texas Family Code, known as the "redesignation statute," provides that the designation of a spouse as a retirement account beneficiary is rendered ineffective by a subsequent divorce. TEX-AS FAM.CODE § 9.302(a).[1] If the statute applied here, it would operate to award Rita's estate the plan proceeds as the alternate beneficiary. *Id.* § 9.302(b). But the court of appeals held, and the parties acknowledge, that ERISA preempts the redesignation statute. *See* 43 S.W.3d at 541. We agree.

ERISA's preemption section states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The United States Supreme Court

---

1. There are exceptions to this rule, such as the post-divorce redesignation of the former spouse as beneficiary or the designation of the former spouse as beneficiary in the divorce decree. *Id.* None of the exceptions are relevant here.

recently held that ERISA expressly preempted a Washington statute similar to our redesignation statute. *Egelhoff v. Egelhoff*, 532 U.S. 141, 143, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). The Court held that the statute had an impermissible connection to ERISA plans for two reasons. First, the statute governed plan administrators' benefit payments and thus "implicate[d] an area of core ERISA concern." *Id.* at 147, 121 S.Ct. 1322. Second, statutes differ among the various states and thus interfere "with nationally uniform plan administration." *Id.* at 148, 121 S.Ct. 1322. For these same reasons, ERISA expressly preempts the Texas statute's application to determine plan beneficiaries. *See Manning v. Hayes*, 212 F.3d 866, 870 (5th Cir.2000), *cert. denied*, 532 U.S. 941, 121 S.Ct. 1401, 149 L.Ed.2d 345 (2001) ("Almost every circuit court to consider the issue ... has determined that a state law governing the designation of an ERISA beneficiary 'relates to' the ERISA plan, and is therefore preempted.").

### III

Deciding that ERISA preempts the Texas redesignation statute, however, only raises a harder question. As the Fifth Circuit noted in *Manning*, "[t]he more difficult issue is whether, having established that the state law is preempted, the federal law governing the resolution of this and similar cases may be reasonably drawn from the text of ERISA itself, or must instead be developed as a matter of federal common law." *Manning*, 212 F.3d at 870. Federal common law is a " 'necessary expedient' " that courts resort to when "compelled to consider federal questions 'which cannot be answered from federal statutes alone.' " *Milwaukee v. Illinois*, 451 U.S. 304, 314, 101 S.Ct. 1784, 68 L.Ed.2d 114

(1981) (citations omitted). Thus, the threshold inquiry is whether ERISA's text explicitly resolves the question before us.

Patsy argues that sections 1002(8) and 1104(a)(1)(D) of ERISA mandate the payment of plan proceeds to her, despite her unequivocal agreement in the divorce decree to relinquish her interest in them. Section 1002(8) defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Section 1104, which delineates the fiduciary responsibilities that ERISA plan administrators owe to plan participants and beneficiaries, requires administrators to discharge their duties "in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104(a)(1)(D). According to Patsy, these provisions prohibit plan administrators from looking beyond the plan documents and require them to distribute benefits to designated beneficiaries regardless of the circumstances. In Patsy's view, ERISA prevents the plans' administrator from giving her waiver of plan benefits any force or effect.

While Patsy's interpretation is simple and easy to apply, we do not believe that ERISA's text prohibits a plan administrator from recognizing a beneficiary's waiver, disclaimer, or other repudiation of plan benefits. First, other provisions of ERISA require plan administrators to look beyond beneficiary designations in plan documents to determine entitlement to plan benefits. For example, while ERISA generally prohibits a participant's assignment or alienation of pension benefits, since 1984 ERISA has provided a limited exception if the benefits are the subject of a qualified domestic relations order (QDRO). *See* 29 U.S.C. § 1056(d)(3)(A).[2]

**2.** Frank and Patsy's divorce decree was signed before the QDRO provision was effective. The parties do not argue, and we do not

consider, whether or not the decree would satisfy the requirements for a QDRO.

A plan administrator presented with a QDRO that satisfies ERISA's fairly detailed requirements must pay an alternate payee designated in the QDRO rather than the beneficiary designated in plan documents. *Boggs v. Boggs,* 520 U.S. 833, 846–47, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). And a spouse who is a designated beneficiary of a joint and survivor annuity may waive entitlement to those benefits under certain circumstances. 29 U.S.C. § 1055(c)(1)(A). Furthermore, the Supreme Court has recognized that ERISA welfare plan benefits may be garnished under state procedures. *See Mackey v. Lanier Collection Agency & Serv. Inc.,* 486 U.S. 825, 841, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

In addition, the Supreme Court has directed courts to look to common-law principles and trust law when interpreting ERISA's fiduciary duty provisions. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (noting that the common law is not just an aid for interpreting ERISA's fiduciary duties, but is even "a starting point"). This is precisely what the majority of circuit courts that have considered the issue have done, holding that federal common law governs disputes between a designated former spouse beneficiary and other claimants to ERISA plan proceeds. *See Manning,* 212 F.3d at 870–72; *Clift v. Clift,* 210 F.3d 268 (5th Cir. 2000); *Rhoades v. Casey,* 196 F.3d 592, 598–99 (5th Cir.1999), *cert. denied,* 531 U.S. 924, 121 S.Ct. 298, 148 L.Ed.2d 240 (2000); *Hill v. AT & T Corp.,* 125 F.3d 646, 648 (8th Cir.1997); *Estate of Altobelli v. Int'l Bus. Machines Corp.,* 77 F.3d 78, 81–82 (4th Cir.1996); *Mohamed v. Kerr,* 53

F.3d 911, 914 (8th Cir.1995), *cert. denied,* 516 U.S. 868, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995); *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1325–27 (5th Cir.1994), *cert. denied,* 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995); *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 280 (7th Cir.1990) (en banc), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693–94 (8th Cir.1989); *see also Melton v. Melton,* 324 F.3d 941, 945 (7th Cir.2003) (noting, in post-*Egelhoff* decision, that "ERISA does not preempt an explicit waiver of interest by a nonparticipant beneficiary of such a plan").[3] These courts have relied upon common-law principles to conclude that the named beneficiary waived entitlement to plan benefits. Only the Sixth Circuit has unambiguously taken the minority view, that ERISA section 1104(a)(1)(D) expressly requires that plan benefits be paid to the designated beneficiary regardless of the circumstances and precludes the application of federal common law. *See McMillan v. Parrott,* 913 F.2d 310, 311–12 (6th Cir. 1990); *see also Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415, 421 (6th Cir.1997); *Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126, 130 (6th Cir.1996); *cf. Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 14–16 (2d Cir.1993) (holding that, although ERISA was "silent on the matter," state law was preempted and "the cause of uniform administration" would not be served if state law were adopted as federal common law).

We do not believe that *Egelhoff* precludes the application of federal common law to this dispute. There, the Supreme Court expressed concern that applying individual state redesignation statutes would

---

**3.** All of these cases were decided after the 1984 amendment to ERISA that the dissent believes "undercuts" the rationale for looking to federal common law. 121 S.W.3d 730 (Hecht, J., dissenting).

require plan administrators to resolve complex choice-of-law issues and become familiar with multiple state statutes in order to determine the appropriate beneficiary, thus "interfering with nationally uniform plan administration." *Egelhoff*, 532 U.S. at 148–49, 121 S.Ct. 1322. In contrast, applying federal common law promotes national uniformity. *Fox Valley*, 897 F.2d at 281–82. The Court in *Egelhoff* did note that the state statute impermissibly interfered with plan administration by requiring administrators to look beyond plan documents to determine matters of payment. *Id.* at 147–48, 121 S.Ct. 1322. But the Court also indicated that applying a more uniform body of law might not present an equivalent hurdle. The Court strongly suggested that state "slayer statutes," or common law based on the principles underlying those statutes, might present a different issue:

> In the ERISA context, these "slayer" statutes could revoke the beneficiary status of someone who murdered a plan participant. Those statutes are not before us, so we do not decide the issue. We note, however, that the principle underlying the statutes—which have been adopted by nearly every State—is well established in the law and has a long historical pedigree predating ERISA. And because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable.

*Id.* at 152, 121 S.Ct. 1322 (citation omitted).[4]

Our decision in *Barnett v. Barnett*, 67 S.W.3d 107 (Tex.2001), is consistent with this approach. There, the surviving spouse's claims depended on her community property rights. *Id.* at 112. Because most states are not community property states, a plurality of this Court believed that our community property laws do not lend themselves "to the application of uniform federal common law" and thus interfere with uniform ERISA plan administration. *Id.* at 126. The plurality recognized, though, that "Congress 'intended that the courts would "develop a 'federal common law of rights and obligations under ERISA-regulated plans.'"'" *Id.* at 122 (quoting *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989))). The question is how that federal common law should be developed.

In this case, the court of appeals held that ERISA preempted our state redesignation statute, but nonetheless applied that statute's express terms as federal common law. 43 S.W.3d at 544.. The court reaffirmed its analysis in a subsequent opinion denying rehearing after the Supreme Court issued *Egelhoff*, stating that "our conclusion that federal law controls is supported by *Egelhoff*." 43 S.W.3d at 544–46. We agree that *Egelhoff* supports the conclusion that federal common law controls, but disagree with the court of appeals' formulation of federal law as a mere conduit for applying individual state statutes. Such an approach presents the same obstacles to national uniformity that ERISA preemption was designed to prevent, requiring plan administrators to determine complex choice-of-law questions, and then to interpret and apply varying

---

**4.** A federal district court has recently held that *Egelhoff* did not change the Fifth Circuit's adoption of the federal common law rule, enunciated in *Brandon*, that recognizes the waiver of ERISA plan benefits. *Metropolitan Life Ins. Co. v. Palmer*, 238 F.Supp.2d 821, 824–26 (E.D.Tex.2002). And at least one court following *Egelhoff* has also held that a murderer should not be permitted to receive benefits from a victim's plan, either under a state slayer statute or under federal common law. *See Admin. Comm. for the H.E.B. Inv. and Ret. Plan v. Harris*, 217 F.Supp.2d 759, 761–62 (E.D.Tex.2002).

state laws. This approach also differs significantly from the one that the majority of federal circuit courts have applied in deciding this issue. While those courts have sometimes looked to state statutes governing the disposition of marital property to inform the analysis, they have gone beyond the statutes to develop a body of common law that recognizes a former spouse's waiver of ERISA plan benefits in a divorce decree dividing the marital estate so long as it is specific, knowing, and voluntary. *See, e.g., Brandon,* 18 F.3d at 1326 (adopting presumption of waiver in Texas statute as federal common law, modified to require that a "waiver be voluntary and in good faith"); *Fox Valley,* 897 F.2d at 280–81 (looking to Illinois statute and to law of other states in determining that federal common law gives effect to a specific waiver); *Lyman Lumber,* 877 F.2d at 693 (applying the principle, derived from various circuit court and state court opinions, that a former spouse's beneficiary interest is extinguished if it is specifically waived). The federal courts' formulation of common law in this area, which ERISA's text does not address, does not interfere with nationally uniform plan administration, and we apply it here.

■ Patsy argues that ERISA's anti-alienation provision precludes giving effect to her waiver. Under that provision, "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). But the circuit courts that have specifically addressed this issue have agreed that this provision applies to the plan participant and "does not apply to a beneficiary's waiver." *Altobelli,* 77 F.3d at 81; *Fox Valley,* 897 F.2d at 280; *cf. Lyman Lumber,* 877 F.2d at 693–94 (holding, without addressing the anti-alienation provision, that ex-spouse can waive pension benefits in a divorce decree). These courts have reasoned that the anti-alienation provision is "a spendthrift device in-

tended to ensure that employees' accrued benefits are available for retirement." *Altobelli,* 77 F.3d at 81. The provision is intended " 'to safeguard a stream of income for pensioners (and their dependents),' " not to bar a waiver in the pensioner's favor. *Id.* (quoting *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 376, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990)); *see also* H.R.Rep. No. 807, 93d Cong., 2d Sess. 67–68 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4734; *Fox Valley,* 897 F.2d at 279. We do not believe that applying the federal common law of waiver implicates or interferes with ERISA's anti-alienation provision. To the extent that *Heggy* conflicts with this opinion, we disapprove it.

## IV

■ In this case, Patsy does not contend that her waiver of plan benefits was not knowing and voluntary. During the divorce, Patsy, but not Frank, was represented by counsel, and it was her attorney who drafted the agreement. The waiver was also specific and clear:

Section 3

DIVISION OF ASSETS

. . .

3.02 *Property of Husband.* The parties agree that Husband shall own, possess, enjoy, free from any claim of Wife, the property listed in Schedule 2 of this agreement. Wife hereby grants, conveys, and assigns to Husband all such property. . . .

Section 4

DIVISION OF EMPLOYEE BENEFITS

. . .

4.02 *Community Ownership.* Husband has earned certain employee benefits arising out of present and past employment and the parties agree that

Husband shall own all of said pension, profit sharing, retirement and deferred compensation benefits of all kinds resulting from his present and past employment as his sole and separate property, without any claim thereto by Wife. . . .

Schedule 2

. . .

(6) All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, or like benefit program existing by reason of Husband's past, present, or future employment, including but not limited to:

. . .

(b) The Teachers' Insurance and Annuity Association—College Retirement Equities Fund.

This agreement clearly contemplates not only a division of the specific retirement plans into separate property, but also a waiver of all Patsy's interest in the plans. If the agreement were limited to Section 4.02, it might not be sufficient to waive Patsy's beneficiary interest. *See Manning*, 212 F.3d at 876 (eschewing a "mechanistic formula," but noting that "language explicitly divesting a former spouse of an interest in any and all employee benefit plans of the other is probably sufficient"); *compare Altobelli*, 77 F.3d at 80 (holding that language that "Wife hereby waives and transfers to the Husband any interest that she may have" created a valid waiver of interest in ERISA benefits), *and Fox Valley*, 897 F.2d at 277 (holding that language that "[t]he parties each waive any interest or claim in and to any . . . plans" created a valid waiver of interest in

ERISA plan), *with Lyman Lumber*, 877 F.2d at 693–94 (holding that decree that husband "shall have as his own, free of any interest of [wife], his interest in the . . . plan" gave husband his own interest in the plan but did not "specifically refer to and modify" the wife's beneficiary interest). But Section 3.02 and Schedule 2 leave no room for doubt that Patsy intended to relinquish all interests she might have in Frank's ERISA plans, including her interest as beneficiary.

## V

We hold that Patsy's waiver of her interest in Frank's ERISA plans was specific, knowing, and voluntary, and thus enforceable under federal common law. Accordingly, we affirm the court of appeals' judgment, although on different grounds.

Justice HECHT filed a dissenting opinion in which Justice OWEN, Justice JEFFERSON and Justice WAINWRIGHT joined.

Justice HECHT, joined by Justice OWEN, Justice JEFFERSON, and Justice WAINWRIGHT, dissenting.

The federal Employment Retirement Income Security Act of 1974 states that an employee benefit plan is to be administered "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [the statute]."[1] Both pension plans in this case provided:

The Beneficiary is as designated by the [Annuitant/Participant] in the application, provided that such designation is in form and wording satisfactory to [the plan provider]. . . .

The [Annuitant/Participant] may designate or change the Beneficiary by giv-

---

1. 29 U.S.C. § 1104(a)(1)(D); *Egelhoff v. Egelhoff*, 532 U.S. 141, 151 n. 4, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (quoting statute).

ing written notice to [the plan provider] at its home office in form and wording satisfactory to [the plan provider]. . . . The plans make no provision for a beneficiary's waiver of benefits. These terms are consistent with ERISA's definition of a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."[2] It should follow, therefore, that ERISA requires pension plans to be administered so that the beneficiary is the person designated by the participant in writing to the plan provider unless it would be inconsistent with other ERISA provisions[3] or the aims of the statute to do so. State law—a divorce decree, a statute, or any other law—that would alter this requirement is preempted, as the United States Supreme Court recently held in *Egelhoff v. Egelhoff*,[4] and as we recognized in *Barnett v. Barnett*.[5] Thus, Frank Weaver's designation of his then-wife Patsy Keen could not be changed by Texas law based on their decree of divorce, their agreement incident to divorce, or section 9.302 of the Family Code that invalidates, with certain exceptions, pre-divorce designations of beneficiaries of retirement plans.[6]

**2.** 29 U.S.C. § 1002(8); *see also Egelhoff*, 532 U.S. at 147, 121 S.Ct. 1322 (quoting statute).

**3.** See, e.g., 29 U.S.C. § 1055(c) (not applicable here, under the effective dates and transitional rules provided in secs. 302 and 303 of the Retirement Equity Act (REA) of 1984, Pub.L. No. 98–397, 98 Stat. 1426 (1984) (codified as a historical note to 29 U.S.C. § 1001 (1985))).

**4.** 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001).

**5.** 67 S.W.3d 107 (Tex.2001).

**6.** Tex. Fam.Code § 9.302 ("Pre–Decree Designation of Ex–Spouse as Beneficiary in Retirement Benefits and Other Financial Plans"):

"(a) If a decree of divorce or annulment is rendered after a spouse, acting in the capacity of a participant, annuitant, or account holder, has designated the other spouse as a beneficiary under an individual retirement account, employee stock option plan, stock option, or other form of savings, bonus, profit-sharing, or other employer plan or financial plan of an employee or a participant in force at the time of rendition, the designating provision in the plan in favor of the other former spouse is not effective unless:

(1) the decree designates the other former spouse as the beneficiary;

(2) the designating former spouse redesignates the other former spouse as the beneficiary after rendition of the decree; or

(3) the other former spouse is designated to receive the proceeds or benefits in trust for, on behalf of, or for the benefit of a child or dependent of either former spouse.

"(b) If a designation is not effective under Subsection (a), the benefits or proceeds are payable to the named alternative beneficiary or, if there is not a named alternative beneficiary, to the designating former spouse.

"(c) A business entity, employer, pension trust, insurer, financial institution, or other person obligated to pay retirement benefits or proceeds of a financial plan covered by this section who pays the benefits or proceeds to the beneficiary under a designation of the other former spouse that is not effective under Subsection (a) is liable for payment of the benefits or proceeds to the person provided by Subsection (b) only if:

(1) before payment of the benefits or proceeds to the designated beneficiary, the payor receives written notice at the home office or principal office of the payor from an interested person that the designation of the beneficiary or fiduciary is not effective under Subsection (a); and

(2) the payor has not interpleaded the benefits or proceeds into the registry of a court of competent jurisdiction in accordance with the Texas Rules of Civil Procedure.

"(d) This section does not affect the right of a former spouse to assert an ownership interest in an undivided pension, retirement, annuity, or other financial plan described by this section as provided by this subchapter.

"(e) This section does not apply to the disposition of a beneficial interest in a retirement benefit or other financial plan of a public retirement system as defined by Section 802.001, Government Code."

Instead of this construction of ERISA, which the Court admits is "simple and easy to apply,"[7] the Court opts for one that is not only more complicated and harder to apply, but one that cannot be squared with the statutory text, at least as we have been given to understand it by *Egelhoff*. In the face of the United States Supreme Court's holding that ERISA preempts a state statute from altering the payment of plan benefits (with the possible exception of "slayer" statutes which prevent murderers from profiting by their crimes, consistent with the ancient equitable maxim that no one is permitted to profit from his own wrong),[8] this Court simply circumvents preemption by allowing state law to be reincarnated as federal common law. The result is the same, practically speaking, as if state law were not preempted at all. The obvious weakness in this position is that the Court is unable to supply any reason, real or imagined, why ERISA would explicitly require plans to be administered according to their terms, preempt state law to assure that end, and then reincorporate state law into federal common law so that plans are not administered according to their terms, thereby making the express statutory language simply illusory. Ignoring this fundamental flaw in its position, the Court instead offers two arguments in support.

The first is that ERISA itself contains exceptions to the rule that plans be administered according to their terms. For example, a 1984 amendment to ERISA allows a change in beneficiary to be made by a qualified domestic relations order.[9] ERISA, in other provisions added by the 1984 amendments, also allows a spouse to waive a mandated joint and survivor annuity in certain circumstances.[10] The Court appears to take the existence of these two express exceptions as an indication that there should be others. I confess the Court's logic eludes me here. Surely the creation of a narrow exception for QDROs suggests fairly strongly: this and nothing else. It is true that the 1984 amendment allowed a plan administrator discretion to treat a divorce decree prior to the amendment's effective date as a QDRO,[11] but this too suggests that the divorce decree cannot be given effect absent the plan administrator's exercise of discretion. Weaver does not argue in this case that the plan administrator elected or should have elected to treat Keen's divorce decree as a QDRO. If a plan beneficiary could be changed by any divorce decree without limitation, a statute allowing changes by divorce decrees only in specified circumstances would have no purpose. It seems plain to me that the 1984 amendment severely undercuts the Court's position.[12]

---

**7.** *Ante* at 724.

**8.** *Egelhoff*, 532 U.S. at 150, 152, 121 S.Ct. 1322.

**9.** 29 U.S.C. § 1056(d)(3)(A), enacted in REA of 1984, Pub.L. No. 98–397, sec. 104(a), 98 Stat. 1426, 1433.

**10.** *Id.* § 1055(c)(1)(A), (g), and (k); REA of 1984, Pub.L. No. 98–397, sec. 103(a), 98 Stat. 1426, 1430.

**11.** See *Dial v. NFL Player Supplemental Disability Plan*, 174 F.3d 606 (5th Cir.1999) (noting that a court reviews a plan administrator's statutory and legal conclusions de novo).

**12.** *See Boggs v. Boggs*, 520 U.S. 833, 850, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (reviewing cases including *In re Marriage of Campa*, 89 Cal.App.3d 113, 152 Cal.Rptr. 362 (1979), *dismissed for want of a substantial federal question*, 444 U.S. 1028, 100 S.Ct. 696, 62 L.Ed.2d 664 (1980), and concluding that: "[w]hether or not this [pre-REA federal common-law] extension of the definition of 'beneficiary' was consistent with the statute then in force, these authorities are not applicable in light of the REA amendments. The QDRO and the surviving spouse annuity provisions define the scope of a nonparticipant spouse's community property interests in pension plans consistent with ERISA.").

The same is true of the waiver provision. If ERISA allows benefits to be waived without regard to plan terms, then a provision that also allows waivers in only some circumstances is pointless. An express recognition of certain waivers indicates that others are not permitted. The Court observes that welfare plan benefits may be garnished.[13] But garnishment is premised on the debtor's being the beneficiary under the plan; otherwise, there is nothing to garnish. Why the Court thinks garnishment has any bearing on whether a plan beneficiary can be changed other than in accordance with the plan's terms is not clear.

The Court's second argument is that the Supreme Court has directed courts to look to federal common law in applying ERISA, and four federal circuits—the Fourth,[14] Fifth,[15] Seventh,[16] and Eighth [17]—have done so in determining whether a designated beneficiary has waived benefits.

But the Supreme Court has allowed recourse to federal common law only in " 'areas where ERISA has nothing to say' ".[18] According to *Egelhoff*, ERISA has something to say about benefits payments: in the Supreme Court's words, ERISA expressly "governs the payment of benefits, a central matter of plan administration." [19] Of the four circuits that have used federal common law to find a waiver of benefits, only one has reiterated that view since *Egelhoff*,[20] and it did not consider whether *Egelhoff* permits a federal common law of waiver under ERISA. No circuit has retreated from its view, but the point is that the cases on which the Court relies largely have not had to consider *Egelhoff*. The Sixth Circuit [21] has refused to apply federal common law to find a waiver of benefits, and the Secretary of Labor has filed an amicus curiae brief in this case arguing that such use of federal common law is inconsistent with *Egelhoff*.

**13.** *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 841, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

**14.** *Estate of Altobelli v. Int'l Bus. Mach. Corp.*, 77 F.3d 78 (4th Cir.1996).

**15.** *Clift v. Clift*, 210 F.3d 268, 269–272 (5th Cir.2000) (addressing a divorce decree waiving "[a]ny and all policies of life insurance" and citing *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321 (5th Cir.1994)).

**16.** *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275 (7th Cir. 1990) (en banc), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990), *distinguished in Melton v. Melton*, 324 F.3d 941, 946 (7th Cir.2003) (no waiver under a divorce agreement that, although it contained a blanket revocation of the parties' "interests in all financial and property rights arising 'by reason of their marital relation' and in 'any asset assigned to a party by this Agreement' ... including 'annuities, life insurance policies,' and other kinds of financial instruments", did not expressly identify husband's ERISA-regulated employee group term life insurance or mention employment-related benefits).

**17.** *Lyman Lumber Co. v. Hill*, 877 F.2d 692, 693–694 (8th Cir.1989) (divorce decree stating that plan participant " 'shall have as his own, free of any interest of [ex-wife], his interest in the profit-sharing plan of his employer' " did not divest ex-wife of her beneficiary interest in the plan; the decree gave the participant his entire interest in the plan free of any interest of ex-wife, but did not specifically refer to or modify ex-wife's beneficiary interest).

**18.** *Egelhoff*, 532 U.S. at 148, 121 S.Ct. 1322 (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 330, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)).

**19.** *Egelhoff*, 532 U.S. at 148, 121 S.Ct. 1322.

**20.** *Melton v. Melton*, 324 F.3d 941, 945 (7th Cir.2003).

**21.** *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126 (6th Cir.1996); *McMillan v. Parrott*, 913 F.2d 310 (6th Cir.1990).

The Secretary makes a compelling case. In *Egelhoff,* the Supreme Court stated that a state statute that requires a plan administrator to pay benefits to beneficiaries other than "those identified in the plan documents ... implicates an area of core ERISA concern":[22]

> In particular, it runs counter to ERISA's commands that a plan shall "specify the basis on which payments are made to and from the plan," [29 U.S.C.] § 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," [29 U.S.C.] § 1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan." [29 U.S.C.] § 1002(8). In other words, unlike generally applicable laws regulating "areas where ERISA has nothing to say," [*Cal. Div. of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.,* 519 U.S. 316, 330, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) ], which we have upheld notwithstanding their incidental effect on ERISA plans, see, *e.g. ibid.,* this statute governs the payment of benefits, a central matter of plan administration.[23]

Furthermore, the Supreme Court stated, "[o]ne of the principal goals of ERISA is to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.' "[24] While application of some federal common law does not theoretically threaten uniform plan administration in the same way fifty states' laws would, as a practical matter uniformity is impaired by the differences in federal common law in the circuits due to the way in which it is derived-by reference to states' laws.

While acknowledging the legitimacy of the Secretary's concerns, the Court is unable to identify a coherent federal common law of waiver. From two cases the Court concludes that a waiver must be specific,[25] but they say nothing about a requirement that a waiver be made in good faith, an additional element the Court finds in another case.[26] Moreover, the Court concludes that a waiver must be voluntary. Thus, ERISA precludes stripping one spouse of any interest in the other's pension plan in a contested divorce but not in an agreed divorce. It is not apparent why the result should be dependent on whether the divorce decree was agreed.

Finally, the Court's position is at odds with our holding last year in *Barnett* that the federal common law does not include a remedy for fraud on a community estate. Why is there a federal common law of waiver but not of fraud? The Court offers no answer.

Frank Weaver was free to change the beneficiaries of his pension plans at any time, provided only that the designations be in writing and in a form suitable to the plan providers. He may not have removed Keen as beneficiary because he thought the divorce decree had accomplished that, or he may have decided to leave her as beneficiary notwithstanding the divorce decree, or he may not have thought about

---

**22.** *Egelhoff,* 532 U.S. at 142, 121 S.Ct. 1322.

**23.** 532 U.S. at 147–148, 121 S.Ct. 1322.

**24.** 532 U.S. at 148, 121 S.Ct. 1322 (quoting *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)).

**25.** *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 281 (7th Cir.1990) (en banc), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989).

**26.** *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1326 (5th Cir.1994).

the matter at all. Rather than put plan administrators to the task of attempting to resolve these virtually inevitable uncertainties about deceased participants' intentions, ERISA provides a general rule that is "simple and easy to apply" for participants, beneficiaries, and plan administrators alike: look to the beneficiary designation, except in very specific cases.

For these reasons, I would hold, as urged by the Secretary of Labor, that the pension plan benefits in this case be paid to the beneficiary designated in accordance with the terms of the plan.